425 S.E.2d 170

**John CURNUTTE and Vicki Nickell,**
**Plaintiffs Below, Appellants,**

**v.**

**David CALLAGHAN, Director, West Virginia Division of Environmental Protection, Defendant Below, Appellee,**

**LYNN BRANCH COAL COMPANY, INC., Intervenor.**

**No. 21202.**

Supreme Court of Appeals
of West Virginia.

Submitted Sept. 22, 1992.

Decided Dec. 14, 1992.

**23.** Dr. Agarwal testified that Mr. Heldreth suffered from angina pectoris.

John T. McFerrin, Charleston, for appellants.

Franklin Lash, West Virginia Div. of Environmental Protection, Nitro, for appellee.

Robert G. McLusky, Jackson & Kelly, Charleston, for intervenor.

McHUGH, Chief Justice:

The appellants, John Curnutte and Vicki Nickell, appeal the final order of the Circuit Court of Kanawha County which dismissed their complaint against the appellee, David Callaghan, Director of the Environmental Protection Agency, for failure to state a claim upon which relief can be granted. Lynn Branch Coal Company, Inc. (hereinafter "Lynn Branch") has intervened in these proceedings.

I

The dispute in the case before us arises from the application for and issuance of a surface mining permit to Lynn Branch for the surface effects and operations associated with its proposed deep mine located off of Route 44 in Logan County, West Virginia. Lynn Branch intends to gain access from Route 44 to the mine entry by way of a private road which has been in existence for many years. The use of the private road to gain access to the site of the min-

ing operations is part of the surface mine under *W.Va.Code*, 22A–3–3(w)(2) [1991].[1]

In October of 1991, the appellants filed a complaint and petition for temporary injunction seeking to enjoin the West Virginia Division of Environmental Protection (hereinafter "DEP") from issuing a surface mining permit to Lynn Branch. The appellants maintained that under the provisions of the West Virginia Surface Coal Mining and Reclamation Act (hereinafter "WVSCMRA"), specifically, *W.Va.Code*, 22A–3–22(d) [1991], Lynn Branch is prohibited from using the private road to gain access to the mine unless it can establish that the road for which it claims to have valid existing rights was used to transport coal prior to August 3, 1977. Approximately one month after the complaint and motion for temporary injunction were filed, the circuit court entered an order denying the motion for temporary injunction and dismissing the complaint.

Thereafter, the appellants filed a petition for appeal of the circuit court's order, and a motion for a temporary injunction, which this Court denied. The appellants then filed a second petition for appeal, and also renewed their motion for a temporary injunction. The appellants' second petition for appeal was accepted by this Court, and a few weeks later, DEP issued a surface mining permit to Lynn Branch. This Court then granted the appellants' motion for temporary injunction during the pendency of this appeal.

On October 22, 1992, Lynn Branch filed a motion to dissolve the injunction and to dismiss the appeal on the grounds that the appellants had withdrawn their appeal of the permit before the Board of Reclamation. The appellants subsequently filed a response to that motion.

II

The sole issue before this Court is whether a private road in existence prior to August 3, 1977, qualifies under the "valid existing rights" exception under *W.Va.*

---

1. The definition of surface mine under *W.Va. Code*, 22A–3–3 [1991] includes the "use of existing roads to gain access to the site of such activities and for haulage[.]" Thus, the use of the private road in this case is considered to be part of the surface mine.

*Code,* 22A–3–22(d) [1991] and 38 *W.Va. C.S.R.* § 2–2.129 (1992). The appellants argue that valid existing rights under WVSCMRA cannot be used to create new rights which did not exist prior to August 3, 1977. The appellee and Lynn Branch contend that, under the federal and state regulations defining valid existing rights with respect to haul roads, *any* road in existence prior to August 3, 1977, would qualify for use as a coal haul road.

This legislature enacted the WVSCMRA to expand the state's protection of the public and the environment from the adverse effects of surface-mining operations through effective control of those operations, while assuring that coal production necessary to the nation's energy requirements and the state's economic well-being is provided.[2] *See Russell v. Island Creek Coal Co.,* 182 W.Va. 506, 511, 389 S.E.2d 194, 199 (1989). As part of the procedures established to ensure that surface-mining operations are conducted in a manner to adequately protect both the public and the environment, *W.Va.Code,* 22A–3–9 [1991] sets forth certain requirements which must be met for all surface mine permit applications. The applicant has the burden of establishing that the application is in compliance with all the requirements of WVSCMRA. *W.Va.Code,* 22A–3–18(b) [1991]. Our discussion of these requirements in the present case, however, is limited to those requirements involving the use of existing roads for hauling coal from the surface mine site.

As we pointed out earlier, the use of existing roads to gain access to the site of surface-mining activities is designated as part of the surface mine under *W.Va.Code,* 22A–3–3 [1991]. As such, it is therefore necessary for a surface mine permit applicant to identify the road intended to be used to gain access to the site, and to submit accurate maps showing "the area of land within the permit area upon which the applicant has the legal right to enter and conduct surface-mining operations[.]" *W.Va.Code,* 22A–3–9(a)(12) [1991].

An applicant is also required under *W.Va.Code,* 22A–3–9(a)(6) [1991][3] to submit a copy of the applicant's newspaper advertisement which shall advise the public of: (1) the proposed mining operation and its location; (2) the location of the division of energy office where the application is available for public inspections; and (3) the time period during which the commissioner will accept written protests from the public. The public is, therefore, given notice of

---

2. *W.Va.Code,* 22A–3–2(b) [1985] provides:

(b) Therefore, it is the purpose of this article to:

(1) Expand the established and effective statewide program to protect the public and the environment from the adverse effects of surface-mining operations;

(2) Assure that the rights of surface and mineral owners and other persons with legal interest in the land or appurtenances to land are adequately protected from such operations;

(3) Assure that surface-mining operations are not conducted where reclamation as required by this article is not feasible;

(4) Assure that surface-mining operations are conducted in a manner to adequately protect the environment;

(5) Assure that adequate procedures are undertaken to reclaim surface areas as contemporaneously as possible with the surface-mining operations;

(6) Assure that adequate procedures are provided for public participation where appropriate under this article;

(7) Assure the exercise of the full reach of state common law, statutory and constitutional powers for the protection of the public interest through the effective control of surface-mining operations; and

(8) Assure that coal production essential to the nation's energy requirements and to the state's economic social well-being is provided.

3. *W.Va.Code,* 22A–3–9(a)(6) provides:

(6) A copy of the applicant's advertisement to be published in a newspaper of general circulation in the locality of the proposed permit area at least once a week for four successive weeks. The advertisement shall contain in abbreviated form the information required by this section including the ownership and map of the tract location and boundaries of the proposed site so that the proposed operation is readily [located] by local residents, the location of the office of the division of energy where the application is available for public inspection and stating that written protests will be accepted by the commissioner until a certain date which shall be at least thirty days after the last publication of the applicant's advertisement[.]

the location of the mine and its access road so that written comments or protests may be submitted.

The proposed location for the road in the present case is within 300 feet of occupied dwellings and a school and within 100 feet of a public road. The restrictions on surface mining activities which are relevant to the facts of this case are found in *W. Va.*

4. *W. Va.Code*, 22A–3–22(d)(3) and (4) [1991] are modeled after 522(e) of the federal Act (Pub.L. 95–87, title V, § 522, Aug. 3, 1977, 91 Stat. 507) which is codified at 30 U.S.C. § 1272(e) (1988). The specific provisions relevant to this case are 30 U.S.C. § 1272(e)(4) and (5) (1988):

> **(e) Prohibition on certain Federal public and private surface coal mining operations**
> After August 3, 1977, and subject to valid existing rights no surface coal mining operations except those which exist on August 3, 1977, shall be permitted—
>
> . . . .
> . . . .
> . . . .
>
> (4) within one hundred feet of the outside right-of-way line of any public road, except where mine access roads or haulage roads join such right-of-way line and except that the regulatory authority may permit such roads to be relocated or the area affected to lie within one hundred feet of such road, if after public notice and opportunity for public hearing in the locality a written finding is made that the interests of the public and the landowners affected thereby will be protected; or
>
> (5) within three hundred feet from any occupied dwelling, unless waived by the owner thereof, nor within three hundred feet of any public building, school, church, community, or institutional building, public park, or within one hundred feet of a cemetery.

5. We note that the definition for valid existing rights with respect to haul roads is different than the other definitions for valid existing rights under both the federal and state regulations. Under 30 C.F.R. § 761.5 (1991), valid existing rights mean:

> (a) *Except for haul roads,* that a person possesses valid existing rights for an area protected under section 522(e) of the Act on August 3, 1977, if the application of any of the prohibitions contained in that section to the property interest that existed on that date would effect a taking of the person's property which would entitle the person to just compensation under the Fifth and Fourteenth Amendments to the United States Constitution;
>
> . . . .
>
> (c) A person possesses valid existing rights if the person proposing to conduct surface coal mining operations can demonstrate that the coal is both needed for, and immediately

*Code,* 22A–3–22(d)(3) and (4) [1991],[4] which provide, in pertinent part:

> (d) After the third day of August, one thousand nine hundred seventy-seven; and *subject to valid existing rights,*[5] no surface mining operations, except those which existed on that date, shall be permitted:
>
> . . . .

adjacent to, an ongoing surface coal mining operation which existed on August 3, 1977. A determination that coal is 'needed for' will be based upon a finding that the extension of mining is essential to make the surface coal mining operation as a whole economically viable;

> (d) Where an area comes under the protection of section 522(e) of the Act after August 3, 1977, valid existing rights shall be found if—
>
> (1) On the date the protection comes into existence, a validly authorized surface coal mining operation exists on that area; or
>
> (2) The prohibition caused by section 522(e) of the Act, if applied to the property interest that exists on the date the protection comes into existence, would effect a taking of the person's property which would entitle the person to just compensation under the Fifth and Fourteenth Amendments to the United States Constitution.

(emphasis added).

The definition of valid existing rights, except for haul roads, set forth in the federal regulation has been the subject of much debate over the fifteen years since the enactment of the federal Surface Mining Control and Reclamation Act (hereinafter "SMCRA"). *See, e.g., Valid Existing Rights Symposium,* 5 J.Min.L. & Pol'y No. 3 (1989–90) (this issue consists of a collection of law and policy research papers which discuss valid existing rights under the federal SMCRA).

Under our state regulation, 38 *W. Va.C.S.R.* § 2–2.129 (1992), valid existing rights, except for haul roads, are defined as follows:

> *Valid Existing Rights* exist, *except for [haul roads],* in each case in which a person demonstrates that the limitation provided for in the Act would result in the unconstitutional taking of that person's rights. . . . A person possesses valid existing rights if he can demonstrate that the coal is immediately adjacent to an ongoing mining operation which existed on August 3, 1977 and is needed to make the operation as a whole economically viable. Valid existing rights shall also be found for an area where a person can demonstrate that an SMA number had been issued prior to the time when the structure, road, cemetery or other entity came into existence.

(emphasis added).

(3) Within one hundred feet of the outside right-of-way line on any public road, except where mine access roads or haulage roads join such right-of-way line ...;

(4) Within three hundred feet from any occupied dwelling, unless waived by the owner thereof, or within three hundred feet of any public building, school, church, community or institutional building, public park, or within one hundred feet of a cemetery[.]

Thus, in order for the private road in this case to qualify as a haul road for the proposed surface-mining operations, it must fall within the valid existing rights exception to *W. Va. Code*, 22A–3–22(d) [1991].

## VALID EXISTING RIGHTS

Although there is no definition of "valid existing rights" under WVSCMRA, the state regulations and the federal regulations define the term. The state regulation, 38 *W. Va. C.S.R.* § 2–2.129 (1992), provides, in relevant part: "For [haul roads], valid existing rights means a road or recorded right-of-way or easement for a road which was in existence prior to August 3, 1977."

Under the federal regulation, 30 C.F.R. § 761.5 (1991), however, "valid existing rights" for haul roads means: "(1) A recorded right of way, recorded easement or a permit for a *coal haul* road recorded as of August 3, 1977, or (2) *Any other road in existence as of August 3, 1977* [.]" (emphasis added).

There are no federal or state court decisions which specifically address the application of the valid existing rights exception to haul roads. However, since the enactment of the federal and state regulations, regulatory authorities have been uncertain as to how the valid existing rights exception should be applied to coal haul roads. For example, in the record before us, the concern over the application of the valid existing rights exception to coal haul roads is reflected in a letter dated October 3, 1978, from the director of the Office of Surface Mining of the United States Department of the Interior (hereinafter "OSM") to the director of the West Virginia Department of Natural Resources (hereinafter "DNR"). In that letter, the OSM director attempts to clarify the application of the valid existing rights exception to haul roads. The OSM director explained that "the DNR should be guided by whether, as of August 3, 1977, there was an existing haul road, whether there was a recorded right-of-way or easement specifically providing for coal haulage access, or whether there was an outstanding permit issued by the DNR or the West Virginia Department of Mines."

After OSM issued its opinion in the letter to DNR, another attempt to clarify what constitutes valid existing rights for haul roads was provided in the Federal Register:

*What would constitute VER for haul roads?* Some commenters were concerned that haul roads utilized for resources other than coal could have VER for surface coal mining operations. Others were concerned that the VER definition for haul roads be consistent with OSM's letter of October 3, 1978, to West Virginia. OSM's analysis indicated that there are two situations in which VER might be established for haul roads. First, an applicant or operator could have a specific right to construct and use a haul road, established by a recorded right-of-way, recorded easement or permit for a coal haul road as of August 3, 1977. The second situation which could establish VER for a haul road is the actual existence of a road as of August 3, 1977, which is being or could be used for coal haulage, including haul roads used for timber, stone or other minerals. Their use for hauling is established. Existing mines or other operations are dependent upon them. Although such roads may have to be upgraded to comply with the standards of the Act, it would be less damaging to the environment to continue the use of such a road than to require that a completely new road be constructed. Commenters' concerns that non-coal haul roads would qualify for VER must be balanced with the environmental disturbance of estab-

lishing new roads because many problems associated with haul roads—noise, dust, vibration—will continue regardless of whether the road is used for coal haulage. If a new road must be established for coal hauling, it will be necessary to disrupt additional land, regrade the surface, build a road bed, establish drainage controls and other facilities necessary to a new road. In addition, the problems of noise, dust, vibration and air pollution will be brought to a new area not previously affected. Accordingly, OSM believes that it is less damaging to use existing roads, whether or not previously used for coal haulage, than to require construction of additional roads. Therefore, all roads in existence as of August 3, 1977, have valid existing rights.

44 Fed.Reg. 14,993 (1979).

Clarification of the valid existing rights exception as it relates to haul roads was again sought in the fall of 1990 in a letter from the Charleston Field Office of OSM to OSM's headquarters. The Charleston Field Office of OSM believed that Congress did not intend for all roads, irrespective of their use, to have valid existing rights. The Charleston Field Office asserted in the letter that "[b]y maintaining that all roads in existence on August 3, 1977, have valid existing rights, OSM would render the 300 foot distance prohibition requirement for dwellings at Section 522(e)(5) of SMCRA meaningless." In response, however, OSM advised the Charleston Field Office that the "any other road" provision in the regulation meant any other road in existence as of August 3, 1977. OSM maintained that, because all information on roads must be included in the permit application, the public will be put on notice of proposals to use existing roads as haul roads and will have an opportunity to voice their concerns to the regulatory authority.

■ We do not have the benefit of any federal judicial interpretation of the valid existing rights exception for haul roads. Nor have we found any case law which gives a different meaning to the plain language of both the federal and state regulations defining haul roads under the valid existing rights exception. Therefore, we must accept and follow the plain meaning of the state regulation as we recognized in syllabus point 1 of *State ex rel. Laurel Mountain v. Callaghan*, 187 W.Va. 266, 418 S.E.2d 580 (1992):

> When the language of a regulation promulgated pursuant to the West Virginia Surface Mining and Reclamation Act, *W.Va.Code*, 22A–3–1 *et seq.*, is clear and unambiguous, the plain meaning of the regulation is to be accepted and followed without resorting to the rules of interpretation or construction.

■ Thus, we conclude that, under the definition of valid existing rights for haul roads provided in 38 *W.Va.C.S.R.* § 2–2.129 (1992), a permit applicant may establish valid existing rights for a coal haul road if the applicant demonstrates that the proposed road was in existence prior to August 3, 1977.

In reaching the decision in this case, we considered the statement by OSM, in its 1990 letter to OSM's Charleston Field Office addressing the use of existing roads under the valid existing rights exception for haul roads, that "[s]ince information on roads must be included in the permit application, the public will be put on notice of proposals to use existing roads as haul roads and will have a chance to comment and raise their concerns to the regulatory authority." The public does have a statutory right to file written objections to proposed permits and to request a hearing before the board of reclamation for approved permits. First, under *W.Va.Code*, 22A–3–20 [1985],[6] interested persons are afforded the opportunity to file written ob-

---

6. *W.Va.Code*, 22A–3–20 [1985] provides, in relevant part:
> Any person having an interest which is or may be adversely affected, ... shall have the right to file written objections to the proposed initial or revised permit application for a sur-

face-mining operation with the commissioner within thirty days after the last publication of the advertisement required in subsection (a) of this section. Such objections shall be immediately transmitted to the applicant by the

jections to proposed surface-mining operations, which would include the use of an existing road as a coal haul road. Next, under *W.Va.Code,* 22A–3–21(b) [1985],[7] interested persons adversely affected by the issuance of a permit may request a hearing before the board of reclamation.

However, it is unclear from OSM's statements what issues or concerns may be raised by the public to challenge valid existing rights claims for haul roads, or what the public must demonstrate to show that an existing road should not be used as a haul road.[8] Notwithstanding the ambiguity of OSM's statements, this issue has not been raised before this Court nor do the particular facts of this case warrant an analysis of this issue.

### III

■ There is no dispute among the parties in the case before us that the road in

question existed prior to August 3, 1977. Moreover, Lynn Branch has submitted affidavits of witnesses attesting to the fact that the road was used as a coal haul road prior to August 3, 1977. Finally, the DEP has represented that Lynn Branch satisfied all of its permit application requirements.[9] Thus, for the reasons set forth herein, we conclude that the order of the circuit court should be affirmed, and that the injunction issued by this Court should be dissolved.[10]

Affirmed.

---

commissioner and shall be made available to the public.

**7.** *W.Va.Code,* 22A–3–21(b) [1985] provides, in pertinent part:
> Within thirty days after the applicant is notified of the commissioner's decision, the applicant or any person with an interest which is or may be adversely affected may request a hearing before the reclamation board of review as provided in article four [§ 22–4–1 et seq.], chapter twenty-two for this code to review the commissioner's decision.

**8.** Although we are uncertain what issues OSM believes the public may raise to challenge valid existing rights claims for haul roads, we do recognize the need to balance the various interests under WVSCRMA and SMCRA. The need to "strike a balance" between the production of coal and the protection of the public and environment under the federal act was recently addressed by the United States District Court of the District of Columbia in *Indiana Coal Council, Inc. v. Lujan,* 774 F.Supp. 1385, 1399 (D.D.C. 1991). In the *Lujan* case, industry plaintiffs brought an action contending that the Secretary of Interior had promulgated regulations under SMCRA that placed burdensome responsibilities for identifying and evaluating unknown historic and archeological resources in mining permit applications. 774 F.Supp. at 1387. The industry plaintiff's principal objection appeared to be based on the mitigation measures for historic properties which affect applicants with valid existing rights. The District Court observed:
> Although SMCRA does not allow OSM or the [state regulatory authorities] to prohibit mining on land subject to valid existing rights,

30 U.S.C. § 1272(e), *the statute authorizes less extreme measures to protect sites covered by Section 522(e), in order to effectuate the balancing of interest required by the Act as a whole. See* 30 U.S.C. §§ 1201(c)–(e), (h), (k), 1202(f). OSM expressly relied on its broad authority under SMCRA in requiring permit applicants with valid existing rights to describe mitigation measures for historic properties listed on the National Register and for public parks. A.R.I. 558; 52 Fed.Reg. 4260.
> Moreover, section 510(a) of SMCRA authorizes the [state regulatory authorities] to 'grant, require modification of, or deny' permit applications. 30 U.S.C. § 1260(a). *That authority is not restricted by valid existing rights.* Subject to the limitations of the takings clause, *see* 30 C.F.R. § 761.5, *the states are not obligated to grant automatically an application for which valid existing rights are claimed.*

774 F.Supp. at 1398–99 (emphasis added).

**9.** Upon questioning by the Court at oral argument, DEP represented that Lynn Branch satisfied all of its permit application requirements.

**10.** We note that the appellants have withdrawn their appeal of the approved permit, and therefore, have chosen not to exhaust their administrative remedies. *See Hechler v. Casey,* 175 W.Va. 434, 441, 333 S.E.2d 799, 806 (1985), quoting *Cowie v. Roberts,* 173 W.Va. 312, 312 S.E.2d 35 (1984), ('[t]he existence of an administrative appeal is as important in determining the appropriateness of extraordinary remedies, such as ... [injunctive relief], as is the existence of an alternate avenue of judicial relief.')