490 S.E.2d 845

**Moses TENNANT, Plaintiff Below, Appellant,**

v.

**David C. CALLAGHAN, Director of the West Virginia Division of Environmental Protection, Defendant Below, Appellee,**

**and**

**American Bituminous Power Partners, L.P. Intervenor Below, Appellee.**

No. 23902

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1997.

Decided July 16, 1997.

Moses Tennant, Fairview, pro se.

Joseph A. Lazell, Office of Legal Services, West Virginia Division of Environmental Protection, Charleston, for David C. Callaghan.

W. Henry Lawrence, IV, Robert D. Pollitt, Steven P. McGowan, Steptoe & Johnson, Clarksburg, for American Bituminous Power Partners, L.P.

PER CURIAM:

The appellant, Moses Tennant, *pro se*, appeals the January 25, 1996 order of the Circuit Court of Marion County which affirmed the Surface Mine Board's decision to dismiss the appellant's appeal. The Surface Mine Board, in a May 17, 1995 order, dismissed the appeal after concluding that it did not have jurisdiction to resolve the issues raised by the appellant. For reasons explained below, we affirm the January 25, 1996 order of the circuit court.

I

The appellant asserts that the issue before the Surface Mine Board was whether the West Virginia Division of Environmental Protection (hereinafter the "DEP") erred in renewing American Bituminous Power Partners, L.P.'s (hereinafter "American Bituminous") Permit No. R–1038–88, (hereinafter the "coal permit"). Although the appellant's argument is somewhat unclear, it appears that he challenged the coal permit renewal on the basis that American Bituminous's acid mine drainage discharge into an underground mine violated the coal permit conditions and resulted in contamination of his well water. However, American Bituminous was authorized to discharge the acid mine drainage in the underground mine pursuant to a permit known as the "NPDES permit." Though the Surface Mine Board has jurisdiction to determine whether American Bituminous's coal permit was properly renewed, *see* W. Va.Code, 22–3–21(b) [1994], it does not have jurisdiction to determine whether the NPDES permit was properly issued. Instead, the Environmental Quality Board reviews the issuance and renewals of NPDES permits. W. Va.Code, 22–11–21 [1994]. Thus, the issue before us is whether the Surface Mine Board has jurisdiction over appellant's complaint or whether the Environmental Quality Board has jurisdiction. To better understand the appellant's argu-

ment and the Surface Mine Board's holding, a brief discussion of the history of American Bituminous's two permits is necessary.

## The Coal Permit

On January 10, 1995, the DEP approved an application to renew American Bituminous's coal permit thereby allowing American Bituminous to continue its surface-mining operations in Marion County.[1] More specifically, the coal permit authorizes American Bituminous to mine an existing coal refuse disposal pile. The coal mined from the coal refuse pile is used as a fuel at the Grant Town Power Plant. The permit also authorizes American Bituminous to utilize the site of the coal refuse pile to dispose of the waste (coal ash)[2] generated by the power plant.

American Bituminous's coal permit was issued under the provisions of the Surface Coal Mining and Reclamation Act found in W. Va.Code, 22–3–1, *et seq.*, which requires any person conducting coal-mining operations in West Virginia to obtain such a permit. W. Va.Code, 22–3–8 [1995]. Once a coal permit is issued, it carries with it the right to successive renewals. Indeed, a coal permit *must* be renewed upon the application of the permittee unless the DEP establishes in written findings or the opponent of the renewal proves that:

> (A) The terms and conditions of the existing permit are not being satisfactorily met . . .; (B) the present surface-mining operation is not in compliance with the applicable environmental protection standards of [the Act]; (C) the renewal requested substantially jeopardizes the operator's continuing responsibility on existing permit areas; (D) the operator has not provided evidence that the bond in effect for said operation will continue in effect for any renewal requested as required pursuant to sections eleven or twelve of [the Act];[3] or

1. Prior to the renewal of this permit a hearing was held on January 3, 1995, regarding whether American Bituminous's coal permit should be renewed. The appellant attended this hearing.

2. As explained by the DEP "[c]oal ash is a byproduct of the electric industry [and] . . . is used at coal mining operations to help prevent the

formation of acid mine drainage." (citation omitted).

3. W. Va.Code, 22–3–11 [1994] is entitled "Bonds; amount and method of bonding; bonding requirements; special reclamation tax and fund; prohibited acts; period of bond liability." W. Va.Code, 22–3–12 [1994] is entitled "Site-specific

(E) any additional revised or updated information as required pursuant to rules promulgated by the [DEP] director has not been provided.

*W. Va.Code*, 22–3–19(a)(1) [1994] (footnote added). Any appeal regarding the DEP's issuance of a coal permit under the Surface Coal Mining and Reclamation Act must be made to the Surface Mine Board. *See W. Va.Code*, 22–3–21(b) [1994].[4]

### The NPDES Permit

On December 27, 1994, the DEP's Office of Water Resources reissued a NPDES[5] permit to American Bituminous which authorized it, *inter alia*, to discharge untreated acid mine drainage from its surface mining operations under the coal permit, as well as cooling water and waste water from the power plant, into an underground mine abandoned by Eastern Associated Coal.

The NPDES permit was issued pursuant to the Water Pollution Control Act found in *W. Va.Code*, 22–11–1, *et seq.*, which requires, according to the DEP, the issuance of such a permit "whenever there is a discharge of any amount of 'pollutant,'[6] treated or untreated, from a 'point source'[7] into the 'waters'[8] of

this state[.]" (footnotes added). *See W. Va. Code*, 20–11–8(b) [1994]. Moreover, *W. Va. Code*, 22–11–8(d) [1994] makes clear that the Office of Water Resources (an office within the DEP) issues NPDES permits for all activities regulated under coal permits which discharge a "pollutant" from a "point source" into the "waters" of this State:

> For water pollution control and national pollutant discharge elimination system permits issued for activities regulated by the office of mining and reclamation and the office of oil and gas, the chief of the office of water resources may delegate functions, procedures and activities to the respective chiefs of those offices. *Permits for such activities shall be issued under the supervision of and with the signature and approval of the chief of the office of water resources who shall review and approve all procedures, effluent limits and other conditions of such permits.*

(emphasis added). Any appeal regarding the Office of Water Resource's issuance of a NPDES permit must be made to the Environmental Quality Board. *See W. Va.Code*, 22–11–21 [1994].[9]

---

bonding; legislative rule; contents of legislative rule; legislative intent; expiration of rule; reporting."

4. *W. Va.Code*, 22–3–21(b) [1994] states, in relevant part: "Within thirty days after the applicant is notified of the [DEP] director's decision, the applicant or any person with an interest which is or may be adversely affected may request a hearing *before the surface mine board* ... to review the [DEP] director's decision." (emphasis added).

5. "NPDES" stands for National Pollutant Discharge Elimination System. *See, e.g., W. Va. Code*, 22–11–4 [1994].

6. "Pollutant" is defined in the Water Pollution Control Act as "industrial wastes, sewage or other wastes as defined in this section[.]" *W. Va. Code*, 22–11–3(17) [1994].

7. "Point source" is defined in the Water Pollution Control Act as "any discernible, confined and discrete conveyance, including, but not limited to, any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock or vessel or other floating craft, from which pollutants are or may be discharged[.]" *W. Va.Code*, 22–11–3(16) [1994].

8. "Waters" is defined in the Water Pollution Control Act as any and all water on or beneath the surface of the ground, whether percolating, standing, diffused or flowing, wholly or partially within this state, or bordering this state and within its jurisdiction, and includes, without limiting the generality of the foregoing, natural or artificial lakes, rivers, streams, creeks, branches, brooks, ponds (except farm ponds, industrial settling basins and ponds and water treatment facilities), impounding reservoirs, springs, wells, watercourses and wetlands[.]

*W. Va.Code*, 22–11–3(23) [1994].

9. *W. Va.Code*, 22–11–21 [1994] states:

Any person adversely affected by an order made and entered by the director [of the DEP] in accordance with the provisions of the [Water Pollution Control Act], or aggrieved by failure or refusal of the chief [of the office of water resources] to act within the specified time as provided in subsection (e) of section eleven [§ 22–11–11(e)] of this article on an application for a permit or aggrieved by the terms and conditions of a permit granted under the provisions of this article, may appeal to the environmental quality board, pursuant to the provisions of article one [§ 22B–1–1 et seq.], chapter twenty-two-b of this code.

### Procedural History

The appellant challenged the DEP's January 10, 1995 renewal of American . Bituminous's coal permit by requesting a hearing before the Surface Mine Board. *See W. Va.Code,* 22–3–21(b) [1994] (Provides for the review of the DEP's decision to grant, deny or renew a coal permit by the Surface Mine Board). The appellant raised several issues which can be best summarized by the following statement, made at the April 25, 1995 hearing before the Surface Mine Board: "I want them [the Surface Mine Board] to stop American Bituminous Power Partners from pumping acid mine drainage cooling water down into Federal No. 1 Mine." The appellant believed that American Bituminous should be required to treat the polluted drainage from the area mined pursuant to the coal permit and water from the power plant before that drainage was discharged into the underground mine.

The Surface Mine Board, after conducting a hearing, determined that the appellant's appeal concerned the issuance of American Bituminous's *NPDES* permit rather than its *coal* permit. The Surface Mine Board stated that because any complaints regarding the issuance of the NPDES permit are within the sole jurisdiction of the Environmental Quality Board, it did not have jurisdiction to resolve the issues raised by the appellant. Thus, the Board dismissed the appellant's appeal by an order dated May 17, 1995.

The appellant appealed the Surface Mine Board's order to the circuit court which, after conducting a hearing and reviewing the underlying record, stated that it could find

> no reason to remand, reverse, vacate, or modify the ruling of the [Surface Mine Board]. [The Surface Mine Board] found

that it lacked jurisdiction to address the issues raised by [the appellant] in the proceedings before it and dismissed his appeal. [The appellant] has presented no evidence nor made any viable argument that this ruling was in violation of constitutional or statutory provisions; in excess of the statutory authority or jurisdiction of the agency; made upon unlawful procedures; affected by other error of law; clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Therefore, this Court is bound under *W. Va.Code,* 29A–5–4(g) [of the State Administrative Procedures Act] [10] to affirm the order or decision of the agency.

(footnote added). It is this conclusion of the circuit court that the appellant appeals.

### II.

### Standard of Review

■ At the outset, we note that pursuant to *W. Va.Code,* 22B–1–9 [1994] the decision of the Surface Mine Board is reviewed by the circuit court pursuant to the provisions of *W. Va.Code,* 29A–5–4 [1964] of the State Administrative Procedures Act. *See* n. 10, *supra.* Consistent with the provisions of *W. Va.Code,* 29A–5–4(g) [1964], we have held that

> "[u]pon judicial review of a contested case under the West Virginia Administrative Procedure[s] Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, va-

---

10. *W. Va.Code,* 29A–5–4(g) [1964] states:

(g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*See W. Va.Code,* 22B–1–9 [1994], "[g]eneral provisions for judicial review" (providing that *W. Va.Code,* 29A–5–4 [1964] governs judicial review of order entered by the Surface Mine Board after appeal hearing).

cate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syl. Pt. 2, *Shepherdstown Volunteer Fire Department v. Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983).' Syllabus Point 1, *St. Mary's Hospital v. State Health Planning and Development Agency,* 178 W.Va. 792, 364 S.E.2d 805 (1987).

Syl. pt. 1, *HCCRA v. Boone Memorial Hospital,* 196 W.Va. 326, 472 S.E.2d 411 (1996). *See also* syl. pt. 3, *West Virginia Division of Environmental Protection v. Kingwood Coal Co.,* 200 W.Va. 734, 490 S.E.2d 823 (1997). If the circuit court's order is appealed to this Court, we review the circuit court's order *de novo,* and thus, review the Surface Mine Board's decision "pursuant to the standard of review articulated in *W. Va.Code,* 29A–5–4(g) [1964] ... and syllabus point 1 of *HCCRA, supra."* *Kingwood Coal Co.,* 200 W.Va. at 747, 490 S.E.2d at 835.

### Surface Mine Board's Jurisdiction

The appellant asserts that the Surface Mine Board erroneously concluded that it did not have jurisdiction to resolve his claim. As previously explained, the appellant's complaint is that American Bituminous should not be allowed to pump untreated acid mine drainage into the underground mine as well as not be allowed to discharge water from the power plant into such mine. The appellant maintains that because the untreated acid mine drainage came from the coal refuse

pile, which is covered by American Bituminous's coal permit, then the Surface Mine Board had jurisdiction of his appeal.

Conversely, the DEP asserts that although the Surface Mine Board would have had jurisdiction had appellant alleged that the area covered by American Bituminous's coal permit was discharging waste without a NPDES permit, the Surface Mine Board did not have jurisdiction to determine whether American Bituminous's NPDES permit had been properly issued in the first instance. As indicated above, the NPDES permit authorized American Bituminous to discharge the untreated acid mine drainage into the underground mine. Thus, the appellant's argument that American Bituminous should not be allowed to discharge such drainage into the underground mine concerns whether the Office of Water Resources should have issued the NPDES permit in the first instance. According to the DEP, appellant's argument, then, does not relate to the renewal of American Bituminous's coal permit. Furthermore, the DEP states that the appellant failed to offer any evidence indicating that the conditions for the renewal of the coal permit set forth in *W. Va.Code,* 22–3–19(a)(1) [1994] had not been satisfied. Therefore, the DEP asserts that the Surface Mine Board properly concluded that it did not have jurisdiction to hear the appellant's claim.

■ We agree with the DEP. The NPDES permit reveals that American Bituminous's practice of pumping untreated acid mine drainage into the underground mine was approved by the Office of Water Resources.[11] As we previously explained, the Office of Water Resources issues NPDES permits for all activities regulated under coal permits which discharge a "pollutant" from a "point source" into the "waters" of this State. *See W. Va.Code,* 22–11–8(d) [1994] of the Water Pollution Control Act. Though the appellant insists that the issue is whether the DEP properly renewed American Bituminous's coal permit, we find that his real complaint is that the Office of Water Resources improper-

11. The NPDES permit states, in relevant part, that American Bituminous "is hereby granted a West Virginia NPDES Water Pollution Control Permit to: operate the Grant Town Power Plant's associated refuse and refuse preparation facilities and ... to inject untreated water into the Pittsburgh Coal Seam [the underground mine]."

ly issued in the first instance, a NPDES permit approving of American Bituminous's practice of pumping untreated acid mine drainage into the underground mine.

Because the nature of the appellant's argument is that he is "aggrieved by the terms and conditions of" the NPDES permit which authorizes American Bituminous to pump untreated acid mine drainage into the underground mine, the appellant must, pursuant to the express language of *W. Va.Code*, 22–11–21 [1994], appeal to the Environmental Quality Board rather than to the Surface Mine Board.[12] *See* syl. pt. 2, *Keen v. Maxey*, 193 W.Va. 423, 456 S.E.2d 550 (1995) (When a statute is clear and unambiguous, it's the duty of the courts not to construe but to apply the statute). *See also* syl. pt. 1, *Francis O. Day Co., Inc. v. West Virginia Reclamation Board of Review*, 188 W.Va. 418, 424 S.E.2d 763 (1992) (Because administrative agencies are creatures of statutes, "[t]hey have no general or common-law powers but [have] only such [power] as have been conferred upon them by law expressly or by implication." (quoted in relevant part)).

We recognize that the Surface Mine Board, pursuant to *W. Va.Code*, 22–3–21(b) [1994] hears any appeal regarding the DEP's issuance of a coal permit under the Surface Coal Mining and Reclamation Act, and thus, would hear an appeal regarding the DEP's renewal of American Bituminous's coal permit. However, our review of the record indicates that the appellant offered no evidence which indicates that the conditions for the renewal of American Bituminous's coal permit set forth in *W. Va.Code*, 22–3–19(a)(1) [1994], had not been satisfied.

Accordingly, after thoroughly reviewing the record before us and the applicable statutes, we cannot conclude that the Surface Mine Board's decision was (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority or jurisdiction of the agency; (3) made upon unlawful procedures; (4) affected by other error of law; (5) clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *See W. Va.Code*, 29A–5–4(g) [1964]; syl. pt. 1, *HCCRA, supra.* Therefore, we affirm the January 25, 1996 order of the Circuit Court of Marion County.

Affirmed.

STARCHER, J., concurs and files a separate opinion.

STARCHER, Justice, concurring:

I concur in the result and in the majority opinion except insofar as it ratifies the *de novo* standard of review announced in *West Virginia Division of Environmental Protection v. Kingwood Coal Co.*, 200 W.Va. 734, 490 S.E.2d 823 (1997).

---

12. The appellant relies on the following language found in a memorandum written by Ron Sturm, a permit supervisor for the Office of Mining and Reclamation in Fairmont, to support his assertions:

The acid mine drainage is being discharged directly into the abandoned mine, with no treatment. The water is of very poor quality, but the water already in the abandoned mine is also of very poor quality. Furthermore, the volume of water already in the mine as compared to the volume of water being discharged down the borehole is so large that there is probably no net effect from a practical standpoint.

Eastern Associated Coal apparently received NPDES approval to discharge [acid mine drainage] down one of these boreholes in late 1988. In Fall of 1989, the permit was renewed and transferred to [American Bituminous] as part of the permitting procedures necessary for the construction of the Grant Town Power Project. In December 1989, American Bituminous received approval for construction and use of a second borehole. Both boreholes continue in use today.

I cannot defend the issuance of these approvals. Even though there *may* be no net environmental effect of this discharge, I feel that WV Code 20–5A–5 indicates that such permit should not be approved. I played no part in the issuances of these NPDES permits, so I will make no effort to justify them.

(emphasis provided). The above language further supports our conclusion that the appellant's real complaint is that the Office of Water Resources issued the NPDES permit authorizing the discharge of untreated acid mine drainage into the underground mine, and thus, should have appealed to the Environmental Quality Board rather than to the Surface Mine Board.