# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2017 Term

No. 16-0827

**FILED**

**November 16, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**TEXAS EASTERN TRANSMISSION, LP,**
Petitioner Below, Petitioner,

**V.**

**WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION,
DIVISION OF MINING AND RECLAMATION,
AND
THE MARSHALL COUNTY COAL COMPANY
F/K/A McELROY COAL COMPANY,**
Respondents Below, Respondents.

**AND**

No. 16-0877

**THE MARSHALL COUNTY COAL COMPANY,
F/K/A McELROY COAL COMPANY,**
Petitioner Below, Petitioner,

**V.**

**TEXAS EASTERN TRANSMISSION, LP,
AND
WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION,
DIVISION OF MINING AND RECLAMATION,**
Respondents Below, Respondents.

Appeals from the Circuit Court of Marshall County
Honorable Jeffrey D. Cramer, Judge
Civil Action No. 09-CAP-1K
AFFIRMED, IN PART, AND REVERSED, IN PART

Submitted: September 13, 2017
Filed:  November 16, 2017

**Kent George**
**W. Bradley Sorrells**
**Robinson & McElwee, PLLC**
**Charleston, West Virginia**
**Craig P. Wilson,** *pro hac vice*
**Anthony R. Holtzman,** *pro hac vice*
**K&L Gates LLP**
**Harrisburg, Pennsylvania**
**Attorneys for**
**Texas Eastern Transmission, LP**

**Scott Driver**
**West Virginia Department of**
**Environmental Protection**
**Charleston, West Virginia**
**Attorney for**
**West Virginia Department of**
**Environmental Protection**

**Douglas J. Feichtner,** *pro hac vice*
**Dinsmore & Shohl LLP**
**Cincinnati, Ohio**
**Jacob A. Manning**
**Dinsmore & Shohl LLP**
**Wheeling, West Virginia**
**William E. Robinson**
**Dinsmore & Shohl LLP**
**Charleston, West Virginia**
**Attorneys for**
**The Marshall County Coal Company**

**Jonathan T. Storage**
**West Virginia Department of**
**Transportation,**
**Division of Highways**
**Charleston, West Virginia**
**Attorney for Amicus Curiae,**
**West Virginia Department of**
**Transportation,**
**Division of Highways**

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.     "When the language of a regulation promulgated pursuant to the West Virginia Surface Mining and Reclamation Act, *W. Va. Code*, [22]-3-1 *et seq.*, is clear and unambiguous, the plain meaning of the regulation is to be accepted and followed without resorting to the rules of interpretation or construction."  Syllabus point 1, *State ex rel. Laurel Mountain/Fellowsville Area Clean Watershed Association, Inc. v. Callaghan*, 187 W. Va. 266, 418 S.E.2d 580 (1992).

2.     W. Va. CSR § 38-2-14.17, read alone or in conjunction with W. Va. CSR § 38-2-3.32.a., contains no requirement that compliance therewith be demonstrated in a permit application tendered in accordance with W. Va. CSR § 38-2-3.

3.     W. Va. CSR § 38-2-16.2.c.2 does not abrogate West Virginia common law with respect to subjacent support waivers contained within coal severance deeds.

**Davis, Justice:**

These consolidated appeals require the Court to interpret various provisions of the West Virginia Surface Coal Mining and Reclamation Rule ("WVSCMRR"), W. Va. CSR §§ 38-2-1 *et seq.*, to determine whether a coal company must, in its application for a modification of its mining permit, describe how it will comply with the Utility Protection Standard found at W. Va. CSR § 38-2-14.17. We also are asked to determine whether the Subsidence Control Plan in the permit application under review adequately set out specific steps that would be taken to protect interstate gas pipelines that cross above a proposed mine site. Finally, we are asked to address whether the WVSCMRR abrogates the common law with respect to a coal operator's right to subside. We conclude that the circuit court correctly found the WVSCMRR does not require a permit application to demonstrate compliance with the Utility Protection Standard. Likewise, we find no error with the circuit court's ruling that the permit application sufficiently described how the coal operator would comply with the Utility Protection Standard. Accordingly, those rulings are affirmed. However, we conclude that the circuit court erred in finding that the WVSCMRR applied regardless of a coal operator's common law property rights. We, therefore, reverse that portion of the circuit court's rulings.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

The Marshall County Coal Company f/k/a McElroy Coal Company ("Marshall Coal") claims that it has ownership of certain underground coal reserves in Marshall County, West Virginia, as well as extensive contractual common law rights to access and mine the coal without liability for effects on the surface of lands overlying the reserve.[1]  Marshall Coal further contends that, on February 10, 1983, the West Virginia Department of Environmental Protection ("WVDEP") issued to Marshall Coal a mine permit authorizing it to explore, develop, and extract coal by longwall mining underneath the surface at the McElroy mine in Marshall County.[2]  In December 2007, Marshall Coal submitted to WVDEP an application for a revision to its permit for the McElroy mine ("Permit Revision Application 33").  The purpose of the revision was to "add area to the subsidence control plan for developmental and longwall mining for the McElroy Deep Mine."[3]

---

[1]According to Marshall Coal, its rights were severed by the original landowners in the early 1900s and sold to Marshall Coal's predecessors-in-interest.  The nature of Marshall Coal's property rights do not appear to be a subject of dispute in this action, and there appear to be no facts in the record pertaining to those rights.

[2]According to Marshall Coal, the permit identification number for this permit is U003383.

[3]Marshall Coal explains in its brief to this Court that "[t]he Permit Revision Application specifically stated that [Marshall Coal] intended to use the longwall method of mining to extract coal in the relevant panels."  Marshall Coal asserts that longwall mining is a method of extracting coal that contemplates planned subsidence and that such method is acceptable under both the federal and state regulatory schemes.  *Citing* 30 C.F.R.
(continued...)

2

Subsequent to Marshall Coal obtaining ownership of the coal reserves and the right to subside the surface, Texas Eastern Transmission, LP ("Texas Eastern") obtained rights-of-way for a portion of the surface area above Marshall Coal's reserves. These rights-of-way allow Texas Eastern to operate four interstate gas transmission pipelines that cross the revised permit area over a distance of approximately four miles. The pipelines are operated pursuant to certificates of public convenience and necessity issued by the Federal Energy Regulatory Commission.[4] According to Texas Eastern, the pipelines transport over two billion cubic feet of natural gas per day to consumers in the mid-Atlantic and Northeastern United States. The pipelines, which are buried at a depth of approximately three feet, range from thirty to thirty-six inches in diameter. The gas pressure in the pipelines is said to vary between approximately 700 and 1,000 pounds per square inch. Texas Eastern avers that the pipelines have limited tolerance for stress created by ground movement associated with subsidence.

---

[3](...continued) § 817.121(c) (addressing repair of damage to surface lands and waters); 38 W. Va. CSR § 2-16.2.a (allowing mining pursuant to technology that "provides for planned subsidence in a predictable and controlled manner").

[4]The record contains the affidavit of a Texas Eastern employee who stated that "[t]he first of the four Texas Eastern Pipelines was placed in service in 1953".

As part of its Permit Revision Application 33, Marshall Coal submitted a subsidence control plan stating, in part, under the heading "Renewable Resource Lands and Features":

> Surface lands other than what is used for dwellings or businesses overlying the projected mining area are primarily pasturelands and non-commercial woodlands. These areas were identified using aerial photographs.
>
> Surface topography in this mining area is primarily comprised of steeply sloping hillsides with limited land uses. Primarily, the land uses are limited to the hilltops and ridgelines where the topography consists of more moderately sloping hillsides and fairly broad ridgetops suitable for pastures and hay/crops, respectively. There are no intensively managed commercial forests or public use lands within the projected mining area. . . .
>
> Due to the mining method (longwall) utilized in the mining of the areas proposed in this application, it is expected that there will be planned subsidence of the above-mentioned surface features and renewable resource lands. If subsidence does occur as a result of the longwall mining, that causes material damage or reduces the value or reasonable foreseeable use of the surface lands, [Marshall Coal] will restore the land or structure(s) or compensate the surface owner.[5]

(Footnote added). In addition, Permit Revision Application 33, under the heading "Gas Lines," states that "[m]ining beneath gas pipelines will be handled per common law practices in accordance with West Virginia codes and regulations and severance deeds between the pipeline owner and [Marshall Coal]."

_____

[5]Texas Eastern possesses a right-of-way and is not the surface owner.

Texas Eastern and Columbia Gas Transmission Corp. ("Columbia Gas"),[6] who also has pipelines crossing Marshall Coal's reserves, both objected to the WVDEP's approval of Marshall Coal's Permit Revision Application 33. Accordingly, a public hearing was held on October 23, 2008. Thereafter, WVDEP approved Marshall Coal's Permit Revision Application 33 on November 25, 2008, expressly finding that the revision was "accurate and complete and all of the requirements of Article 3, Chapter 22, and the Regulations have been complied with." Texas Eastern then appealed the WVDEP's approval of Permit Revision Application 33 to the West Virginia Surface Mine Board ("SMB"), asserting, in relevant part, that Marshall Coal's Permit Revision Application 33 was deficient because it failed to: (1) demonstrate that Marshall Coal would conduct its mining operation is a way that would protect Texas Eastern's pipelines and (2) specify in its subsidence control plan the measures that would be taken to protect Texas Eastern's pipelines from material damage. Columbia Gas also appealed the WVDEP's approval of Marshall Coal's Permit Revision Application 33.[7]

---

[6]Columbia Gas Transmission Corp. ("Columbia Gas") is not a party to the instant appeal.

[7]*See supra* note 6.

Columbia Gas also had earlier appealed to the SMB a permit revision application by Consolidation Coal Co. ("Consol Appeals")[8] that shared "common, dispositive questions of law"[9] with the appeals of Marshall Coal's Permit Revision Application 33 at issue in the case *sub judice* ("Marshall Coal Appeals"). Accordingly, in order to avoid duplication of efforts by the SMB and the parties with respect to the Marshall Coal Appeals, the parties to the Marshall Coal Appeals stipulated that the legal proceedings in the Consol Appeals would govern the Marshall Coal Appeals.

The SMB's order dated February 18, 2009, in the Consol Appeals, addressed cross summary judgment motions on two issues: (1) whether WVDEP erred in issuing permits to Consolidation Coal Co. ("Consol") without requiring Consol to specify the measures it would take to protect Columbia Gas' pipelines in advance of mining and (2) whether Consol had an obligation to correct or repair material damage to Columbia Gas' pipelines regardless of the parties' common law property rights. As to the first issue, pre-mining protection of gas pipelines, the SMB denied Columbia Gas' motion for summary

---

[8]Columbia Gas had appealed the approval of two separate applications filed by Consolidation Coal Co. ("Consol"). The two Columbia Gas appeals had been consolidated by the SMB.

[9]According to the SMB, Columbia Gas, in its appeals to decisions involving Consol, complained that "WVDEP's permit actions did not require Consol to provide sufficient protections to Columbia Gas' pipelines from potential damages caused by underground mining-induced surface subsidence. Columbia Gas argued that neither permit required Consol to undertake pre-mining measures to prevent damage to Columbia Gas' pipelines."

judgment and granted Consol's summary judgment motion. The SMB based its decision upon its finding that the WVDEP properly interpreted state regulations to require that subsidence control plans contained in permit applications describe the measures to be taken to either mitigate subsidence damages to pipelines prior to mining or to remedy subsidence damage caused by mining, but do not require mine operators to describe both. As to post-mining subsidence-induced damage to pipelines, the SMB granted Columbia Gas' motion for summary judgment and denied Consol's summary judgment motion, ruling that state regulations required Consol to either repair or compensate for such damages regardless of its common law property rights. Consol had raised an additional argument asserting that, if state regulations were interpreted as requiring it to either repair or compensate for damages to commercial structures such as gas lines, then the state regulation was more stringent than the parallel federal regulation. According to Consol, WVDEP was required to make specific written findings of the need for a provision that is more stringent than the comparable federal mining provision, and it had failed to do so. The SMB found that ruling upon this issue was outside of its authority and concluded that such a determination should be left to a court of competent jurisdiction.

The SMB then issued a final order, dated March 26, 2009, in the Marshall Coal Appeals. The order summarily stated that the appeals were granted in part and dismissed in

part for the reasons that had been set out in its amended[10] final order rendered in the Consol Appeals. Texas Eastern, Columbia Gas, Consol, and Marshall Coal each filed a separate appeal to the SMB's order.[11] On October 7, 2013, Columbia Gas and Consol voluntarily dismissed their appeals, leaving only Texas Eastern and Marshall Coal as parties to the appeal.

On August 5, 2016, the Circuit Court of Marshall County issued its order affirming the SMB. On September 6, 2016, Texas Eastern filed an appeal of the Circuit Court's order in this Court, where it was designated as Appeal Number 16-0827. Thereafter, on September 16, 2016, Marshall Coal filed in this Court a separate appeal of the same order, which was designated as Appeal Number 16-0877.[12] By order entered December 5, 2016,

---

[10]In its summary order rendered in the Marshall Coal Appeals, the SMB refers to its "*amended* final order" in the Consol Appeals. The SMB fails to provide a date for the "amended" order. The only SMB order rendered in the Consol Appeals that is contained in the record submitted on appeal simply bears the title "Order," with no indication that it is an amended version of a prior order. Thus, it is unclear from the record in this case whether the SMB issued a separate, *amended*, final order in the Consol Appeals, or whether its reference to an "amended" final order is, perhaps, a typographical error.

[11]Texas Eastern and Columbia Gas filed separate appeals of the March 26, 2009, order of the SMB in the Circuit Court of Kanawha County. Marshall Coal filed its appeal of the order in the Circuit Court of Marshall County. The Circuit Court of Kanawha County transferred the Texas Eastern and Columbia Gas appeals to the Circuit Court of Marshall County, where they were consolidated with Marshall Coal's appeal.

[12]We recognize the participation of amicus curiae, the West Virginia Department of Transportation, Division of Highways ("Highways"), who filed a brief in support of the respondent, the West Virginia Department of Environmental Protection

(continued...)

8

this Court granted a joint motion to consolidate the two appeals for purposes of filing a joint appendix and for consideration of the merits.

## II.

## STANDARD OF REVIEW

This Court has recognized that, pursuant to W. Va. Code § 22B-1-9 (1994) (Repl. Vol. 2010), a "decision of the Surface Mine Board is reviewed by the circuit court pursuant to the provisions of *W. Va. Code* § 29A-5-4 [(1998) (Repl. Vol. 2010)] of the State Administrative Procedures Act." *Tennant v. Callaghan*, 200 W. Va. 756, 760, 490 S.E.2d 845, 849 (1997). We further have recognized that,

> [i]f the circuit court's order is appealed to this Court, we review the circuit court's order *de novo*, and thus, [we likewise] review the Surface Mine Board's decision "pursuant to the standard of review articulated in *W. Va. Code*, 29A-5-4(g) [(1998) (Repl. Vol. 2010)] . . . and syllabus point 1 of [*HCCRA v. Boone Memorial Hospital*, 196 W. Va. 326, 472 S.E.2d 411 (1996).]"

*Tennant*, 200 W. Va. at 761, 490 S.E.2d at 850. *Accord West Virginia Div. of Envtl. Prot. v. Kingwood Coal Co.*, 200 W. Va. 734, 747, 490 S.E.2d 823, 835 (1997). Thus, insofar as our review is governed by the same standards that apply to the circuit court, we recognize that,

---

[12](...continued)
("WVDEP"), in relation to Appeal Number 16-0877. We appreciate the contribution of the amicus and will consider its brief in conjunction with the parties' arguments.

9

"'[u]pon judicial review of a contested case under the West Virginia Administrative Procedure[s] Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."' Syl. Pt. 2, *Shepherdstown Volunteer Fire Department v. Human Rights Commission*, 172 W. Va. 627, 309 S.E.2d 342 (1983)." Syllabus Point 1, *St. Mary's Hospital v. State Health Planning and Development Agency*, 178 W. Va. 792, 364 S.E.2d 805 (1987).

Syl. pt. 1, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 472 S.E.2d 411 (1996).

To the extent that our resolution of the instant appeal also requires this Court to interpret statutory provisions and state rules, we further recognize that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

With regard for the foregoing standards, we address the assignments of error raised by the parties in these consolidated appeals.

## III.

## DISCUSSION - APPEAL NUMBER 16-0827

Texas Eastern, petitioner in Appeal Number 16-0827, argues that the circuit court erred in affirming the SMB's determination that, under the West Virginia Code of State Rules, an applicant for a longwall mine permit need not demonstrate in its application how harm to natural gas pipelines will be minimized or reduced. Texas Eastern relies on three grounds to support its assertion of error. We will address two of these grounds in turn.[13]

### A. *West Virginia Utility Protection Standard*

Texas Eastern first argues that Marshall Coal was required, but failed, to demonstrate in its Permit Revision Application 33 that it would comply with the West Virginia Utility Protection Standard ("Utility Protection Standard"), found at W. Va. CSR § 38-2-14.17.[14] Marshall Coal, a respondent in Appeal No. 16-0827, responds that the Utility

---

[13]Texas Eastern's third ground asserts that the circuit court's conclusion is inconsistent with *key objectives* of the West Virginia Surface Coal Mining and Reclamation Act, W. Va. Code § 22-3-1 *et seq.* Because our decision in these consolidated appeals is based upon our interpretation of the law, we need not address this issue.

[14]Although the SMB's order in the Consol Appeals, which was adopted by the SMB in the Marshall Coal Appeals, acknowledges that W. Va. CSR § 38-2-14.17 was raised

(continued...)

11

Protection Standard is a performance standard, and, as such, it should not be confused with the application requirements for pre-mining permits and permit revisions. We agree with Marshall Coal. The WVDEP, a respondent in Appeal No. 16-0827, did not address this specific issue.

Notably, W. Va. CSR § 38-2-14,[15] the section of the W. Va. CSR in which the Utility Protection Standard is found, bears the title "Performance Standards" and is separate and apart from W. Va. CSR § 38-2-3, which is the portion of the rules expressly addressing permit application requirements and contents. The introductory sentence of W. Va. CSR § 38-2-14 is clear in stating that the performance standards apply to mining *operations*: "[i]n addition to the requirements of the Act, the following performance standards shall be applicable to both surface and underground *mining operations*." (Emphasis added). No reference to *application requirements* is made in this introductory sentence. Contained within the performance standards is the specific provision referred to by Texas Eastern as the "Utility Protection Standard," which reads as follows:

---

[14](...continued)
as a ground for imposing the requirements advocated by Texas Eastern into the permit process, the SMB did not expressly address this Rule, instead basing its ruling on other grounds that we will address below. However, because the SMB ruled against Texas Eastern, it is clear that the SMB rejected this argument even though it was not expressly addressed. Accordingly, we will address the issue.

[15]W. Va. CSR § 38-2 has been amended four times since Marshall Coal submitted its Permit Revision Application 33; however, the language of W. Va. CSR § 38-2-14 discussed herein has not been changed.

14.17. Utility Installations.  All surface mining operations[16] shall *be conducted* in a manner which minimizes damage, destruction, or disruption of services provided by oil, gas, and water wells; oil, *gas* and coal-slurry *pipelines*; railroads; electric and telephone lines; and water and sewage lines which pass over, under, or through the permit area, unless otherwise approved by the owner of those facilities and the Secretary.

W. Va. CSR § 38-2-14.17 (footnote and emphasis added).  This Court has recognized that "[w]hen the language of a regulation promulgated pursuant to the West Virginia Surface [Coal] Mining and Reclamation Act, *W. Va. Code*, [22]-3-1 *et seq.*, is clear and unambiguous, the plain meaning of the regulation is to be accepted and followed without resorting to the rules of interpretation or construction."  Syl. pt. 1, *State ex rel. Laurel Mountain/Fellowsville Area Clean Watershed Ass'n, Inc. v. Callaghan*, 187 W. Va. 266, 418 S.E.2d 580 (1992).  *Accord* Syl. pt. 2, *Curnutte v. Callaghan*, 188 W. Va. 494, 425 S.E.2d 170 (1992).  The foregoing language plainly pertains to how mining operations should be *conducted vis-à-vis* utility installations.  W. Va. CSR § 38-2-14.17 simply makes no reference to any permit application requirements.

---

[16]Although Marshall Coal's mine is an underground mine, we note that, pursuant to W. Va. Code § 22-3-3(u)(1) (2000) (Repl. Vol. 2014), "'surface mining operations'" includes, "subject to the requirements of section fourteen [§ 22-3-14] of this article, surface operations and surface impacts *incident to an underground coal mine. . . .*" (Emphasis added).  *See also* Syl. pt. 4, *Antco, Inc. v. Dodge Fuel Corp.*, 209 W. Va. 644, 646, 550 S.E.2d 622, 624 (2001) ("The definitions of 'surface mine,' 'surface mining,' or 'surface-mining operations' contained within the West Virginia Surface Coal Mining and Reclamation Act, W. Va. Code § 22-3-1, *et seq.*, include 'surface impacts incident to an underground coal mine,' and areas 'where such activities disturb the natural land surface.'").

13

Texas Eastern reasons, however, that W. Va. CSR § 38-2-3.32.a,[17] which *is* included in the rules that set out the requirements for permit applications and their contents, compelled Marshall Coal to demonstrate in its application that it would comply with the Utility Protection Standard.[18]

> Pursuant to W. Va. CSR § 38-2-3.32.a:
>
> 3.32.   Findings – Permit Issuance.
>
> 3.32.a.  The Secretary shall review an application for a permit, a permit revision, or a permit renewal, written comments and objections submitted relative to the application, records of any informal conference or hearing held relative to the application, and issue a written decision either granting, requiring modification of, or denying the application.  If an informal conference is held, the decision shall be made within thirty (30)

---

[17]Although W. Va. CSR § 38-2 has been amended four times since Marshall Coal submitted its Permit Revision Application 33, the language of W. Va. CSR § 38-2-3.32.a has not been changed.

[18]Neither the order of the SMB nor the circuit court's order discusses W. Va. CSR § 38-2-3.32.a.  However, insofar as the Rule has been briefed by both parties, and Marshall Coal has not objected to this issue, we will assume the Rule was raised below and will exercise our discretion to consider the same.  *Cf. Falls v. Union Drilling Inc.*, 223 W. Va. 68, 71 n.8, 672 S.E.2d 204, 207 n.8 (2008) (per curiam) ("Although this interlocutory matter is not, as a matter of procedure, technically proper before us as an appeal, because Appellees have not raised this issue, and have addressed the issues presented herein on their merits, we will, in our discretion, address this matter as an appeal that is properly before us.  In other contexts, we have, in our discretion, proceeded to address matters not technically appropriate for review when the parties involved do not object.  *See* Syl. Pt. 3, *State v. Salmons*, 203 W. Va. 561, 509 S.E.2d 842 (1998) (when a defendant assigns an error in a criminal case for the first time on direct appeal, the state does not object to the assignment of error and actually briefs the matter, and the record is adequately developed on the issue, the Court may, in its discretion, review the merits of the assignment of error).").

days of the close of the conference, unless a later time is necessary to provide an opportunity for an appeal. *The applicant for a permit or revision of a permit shall have the burden of establishing that his application is in compliance with all the requirements of the Act and this rule.*

(Emphasis added). Texas Eastern focuses on the last sentence of the foregoing provision and, interpreting the language broadly, argues that it requires an application to expressly demonstrate compliance with all rules included in the WVSCMRR, including the performance standards. Marshall Coal, on the other hand, emphasizes that the quoted portion of W. Va. CSR § 38-2-3.32.a. references the *"burden of establishing that his *application* is in compliance with all the requirements of the Act and this rule."* (Emphasis added). Marshall Coal thereby implies that the provision merely calls for an applicant to demonstrate compliance only with rules pertaining to an application for a permit or permit revision. Marshall Coal reasons that compliance with Texas Eastern's interpretation of W. Va. CSR § 38-2-3.32.a. would be impossible insofar as it would require every operator to explain in every permit application how they will comply with every individual performance standard years in advance of active mining.

At the outset, we observe that both W. Va. CSR § 38-2-14 and W. Va. CSR § 38-2-3 are legislative rules promulgated by the WVDEP, Division of Mining and Reclamation, that bear the force and effect of law. *See* Syl. pt. 5, *Smith v. West Virginia Human Rights Comm'n*, 216 W. Va. 2, 602 S.E.2d 445 (2004) ("A regulation that is proposed

15

by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W. Va. Code*, 29A-1-2(d) [1982], and such a legislative rule has the force and effect of law."). Furthermore, "[i]t is generally accepted that statutes and administrative regulations are governed by the same rules of construction." *West Virginia Racing Comm'n v. Reynolds*, 236 W. Va. 398, 402, 780 S.E.2d 664, 668 (2015) (quotations and citations omitted). *Accord West Virginia Dep't of Transp. v. King*, 238 W. Va. 369, 374, 795 S.E.2d 524, 529 (2016); *Vance v. West Virginia Bureau of Emp't Programs/Elkins Job Serv.*, 217 W. Va. 620, 623, 619 S.E.2d 133, 136 (2005) (per curiam).

Upon examination of W. Va. CSR § 38-2-3.32.a., we reject Texas Eastern's broad interpretation of the last sentence it has pulled from the Rule. It is well established that,

> "[i]n the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety." Syllabus Point 1, *Parkins v. Londeree*, 146 W. Va. 1051, 124 S.E.2d 471 (1962).

Syl. pt. 5, *Miller v. Wood*, 229 W. Va. 545, 729 S.E.2d 867 (2012). Reading the provision in context, it is clear that a permit applicant is required to establish that the application is in compliance with all the requirements of the Act and the Rule *as they pertain to the application* for a permit, permit revision, or permit renewal. Indeed, the larger Rule of which W. Va. CSR § 38-2-3.32.a. is a part, *i.e.*, the entirety of W. Va. CSR § 38-2-3, expressly

16

pertains to "Permit Application Requirements and Contents."[19] Moreover, W. Va. CSR § 38-2-3.32.a., itself, is part of a section relating to the Secretary's[20] review of an application and the issuance of the sought-after permit, permit revision, or permit renewal, including any comments, objections, informal conference, or hearing relative to the application. Thus, it is plainly apparent that an applicant's burden of establishing compliance with "all the requirements of the Act and this rule" pertains to the Secretary's review of the same and is limited to showing compliance only with rules and requirements of the Act that relate to the application.

We find additional support for our conclusion in the fact that there is at least one provision contained within the performance standards that expressly mandates that certain information be included in the application. In this regard, W. Va. CSR § 38-2-14.15.a.2 expressly provides that:

> [*a*]*ll permit applications shall incorporate into the required mining and reclamation plan* a detailed site specific description of the timing, sequence, and areal extent of each progressive phase of the mining and reclamation operation which reflects how the mining operations and the reclamation operations will be coordinated so as to minimize the amount of disturbed, unreclaimed area, minimize surface water runoff, comply with the storm water runoff plan and to quickly establish

---

[19]In fact, W. Va. CSR § 38-2-3 consists of thirty-one subsections that give detailed specifications for the information that must be included in a permit application.

[20]"Secretary means the Secretary of the Department of Environmental Protection or his authorized agent." W. Va. CSR § 38-2-2.109.

and maintain a specified ratio of disturbed versus reclaimed area throughout the life of the operation.

Thus, if the WVDEP intended to include within the Utility Protection Standard a requirement for any information to be included in a permit application, the rule would certainly have so stated.

> It is not for this Court arbitrarily to read into [a statute or legislative rule] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes [or legislative rules] something the Legislature purposely omitted.

*Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996). *Accord West Virginia Reg'l Jail & Corr. Facility Auth. v. Marcum*, ___ W. Va. ___, 799 S.E.2d 540, 543 (2017).

Accordingly, we hold that W. Va. CSR § 38-2-14.17, read alone or in conjunction with W. Va. CSR § 38-2-3.32.a., contains no requirement that compliance therewith be demonstrated in a permit application tendered in accordance with W. Va. CSR § 38-2-3. Because Marshall Coal had no obligation to demonstrate in its permit application that it would comply with the Utility Protection Standard found at W. Va. CSR § 38-2-14.17, we find no grounds for reversal on this issue.

## B. *Subsidence Control Plan*

We next address the circuit court's finding as to the sufficiency of the Subsidence Control Plan included in Marshall Coal's Permit Revision Application 33. Pursuant to W. Va. CSR § 38-2-3.12.a, "[e]ach application for an underground coal mining permit shall contain a subsidence control plan . . . ." In addition, under W. Va. CSR § 38-2-3.12.a.1, the subsidence control plan must contain a survey that identifies, among other things, structures (such as gas pipelines), and "a narrative indicating whether or not subsidence could cause material damage or diminution of value or use of such structures."[21] W. Va. CSR § 38-2-3.12 also contains numerous subsections that set out specific information

---

[21]W. Va. CSR § 38-2-3.12.a.1 (2016) states, in relevant part:

> 3.12.a. Each application for an underground coal mining permit shall contain a subsidence control plan which includes the following:

> 3.12.a.1. A survey that identifies, on a topographic map of a scale of 1# = 1,000# more, *structures*, perennial and intermittent streams, or renewable resource lands *and a narrative indicating whether or not subsidence could cause material damage or diminution of value or use of such structures*, or renewable resource lands both on the permit area and adjacent areas within an angle of draw of at least 30° unless a greater area is specified by the Secretary. . . .

(Emphasis added). The earlier version of W. Va. CSR § 38-2-3.12.a.1 that was in effect at the time Marshall Coal submitted its Permit Revision Application 33, required "a narrative indicating whether or not subsidence could contaminate, diminish or interrupt water supplies both on the permit area and adjacent areas . . . ." W. Va. CSR § 38-2-3.12.a.1 (2006).

that may be required as part of the subsidence control plan if the requisite circumstances are present. In this regard, W. Va. CSR § 38-2-3.12.d.2 states:

> 3.12.d. Where longwall mining or room and pillar mining with 80% recovery or greater is proposed, the following information *shall* be made a part of the plan:
>
> . . . .
>
> 3.12.d.2. For all areas identified by the survey, *indicate what measures will be taken to minimize material damage or reduction in value or reasonably foreseeable use.* Indicate those areas in which measures are to be taken. *Such measures may include, but not be limited to*, relocating panels, mining without interruption, exposing gas lines, supporting foundations of structures,[22] and insuring that any damage is repaired.

(Emphasis & footnote added).[23]

---

[22]Pursuant to the definitions portion of the W. Va. Surface Coal Mining and Reclamation Rule, found at W. Va. CSR § 38-2-2.119,

> [s]tructure means, except as used in the context of subsection 3.8 of this rule, any man-made structures within or outside the permit areas which includes, but is not limited to: dwellings, outbuildings, commercial buildings, public buildings, community buildings, institutional buildings, *gas lines*, water lines, towers, airports, underground mines, tunnels and dams. The term does not include structures built and/or utilized for the purpose of carrying out the surface mining operation.

(Emphasis added).

[23]Texas Eastern correctly observes that W. Va. CSR § 38-2-3.12.d applies only to certain mining operations specifically described therein, *i.e.*, "[w]here longwall mining or room and pillar mining with 80% recovery or greater is proposed."

The SMB's February 18, 2009, order rendered in the Consol Appeals, the proceeding to which the parties to the instant matter agreed to be bound, discussed W. Va. CSR § 38-2-3-12.d.2 and indicated that the SMB unanimously affirmed the WVDEP's position that the provision *refers* to certain types of mitigation measures that may be undertaken, but *does not require* any particular mitigation action.[24] Likewise, the circuit court concluded that W. Va. CSR § 38-2-3.12.d.2 "refers to certain types of mitigation measures which may be undertaken but does not require any particular mitigation action."

Texas Eastern argues that Marshall Coal failed to comply with W. Va. CSR § 38-2-3.12.d.2 by failing to include, in the portion of its application setting out its subsidence control plan, a narrative indicating whether or not subsidence could cause material damage to, or the reduction in value of, or the reasonably foreseeable use of, Texas Eastern's pipelines, and a description of the measures Marshall Coal would take to minimize

_____

[24]In addition, the SMB read W. Va. CSR § 38-2-3-12.d.2 along with W. Va. CSR § 38-2-3.12.a.6 and ruled that "WVDEP properly interprets the provisions at WV CSR 38-2-3.12.a.6 and 38-2-3-12.d.2 to require that subsidence control plans in permits describe the measures to be taken to either mitigate subsidence damages to pipelines prior to mining or to remedy subsidence damage, but do not require mine operators to describe both." The circuit court affirmed the SMB on this point. Texas Eastern contends that the circuit court erred by reading the two provisions together and concluding that a mine permit applicant may choose between protecting structures in advance or, alternatively, repairing or paying compensation for damage to them after the fact. The manner in which we resolve this appeal forecloses the need for us to address this specific issue.

21

material damage to, or the reduction in value of, or the reasonably foreseeable use of, Texas Eastern's pipelines.

Marshall Coal responds that no West Virginia statute or subsidence control regulation requires it to specify in its application how it will, itself, minimize or reduce subsidence damage to pipelines. Additionally, Marshall Coal contends that reading the language in its permit application demonstrates that it complied with W. Va. CSR § 38-2-3.12.d.2. Marshall Coal further avers that it notified Texas Eastern that its pipelines could be damaged by subsidence.[25]

---

[25]Marshall Coal explains that underground mine operators intending to extract coal beneath surface and structures must notify surface and structure owners of this intent. W. Va. CSR § 38-2-16.1. The notice must indicate, among other things, the type of mining method to be used, whether planned subsidence will occur, and identify the specific area that will be mined and the relationship of those areas to surface property and structures. *See id.* & W. Va. CSR § 38-2-3.12 (requiring subsidence control plan). In addition, the notice must indicate the timing of mining activities beneath the property and information abut the subsidence control plan and mine progress maps that the surface owner may review. *See id.* Marshall Coal contends that it did all of these things, which are sufficient to provide Texas Eastern with necessary details about the mining operation and potential subsidence damage to pipelines. Moreover, Marshall Coal explains that the narrative in its application makes clear that between the pipeline owner and Marshall Coal, the party responsible for protecting those lines *would be determined by common law practices and severance deeds*, which, Marshall Coal believes, would place the burden of protecting the lines on Texas Eastern.

WVDEP argues that the circuit court's ruling correctly found that Marshall Coal's subsidence control plan satisfied the requirements of the applicable provisions. Therefore, the circuit court should be affirmed.

W. Va. CSR § 38-2-3.12.d.2 is clear in mandating that the required subsidence control plan include an indication of what measures will be taken "to minimize material damage or reduction in value or reasonably foreseeable use." *See* Syl. pt. 1, *State ex rel. Laurel Mountain/Fellowsville Area Clean Watershed Ass'n, Inc. v. Callaghan*, 187 W. Va. 266, 418 S.E.2d 580 ("When the language of a regulation promulgated pursuant to the West Virginia Surface [Coal] Mining and Reclamation Act, *W. Va. Code*, [22]-3-1 *et seq.*, is clear and unambiguous, the plain meaning of the regulation is to be accepted and followed without resorting to the rules of interpretation or construction."). The provision goes on to list some of these measures, introducing them with the phrase "*may* include, but not be limited to . . . ." (Emphasis added). This Court has long recognized that, "[u]nder settled rules of construction, . . . the word 'may' generally should be read as conferring both permission and power." *Manchin v. Browning*, 170 W. Va. 779, 785, 296 S.E.2d 909, 915 (1982), *overruled on other grounds by State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W. Va. 227, 744 S.E.2d 625 (2013). *See also State ex rel. Trent v. Sims*, 138 W. Va. 244, 272, 77 S.E.2d 122, 139 (1953) ("In constitutional provisions the word 'may' generally should be read as both

23

permission and power."); *State v. Stepp*, 63 W. Va. 254, 258, 59 S.E. 1068, 1070 (1907) ("The statute does use the word 'may,' which is usually only permissive or discretionary.").

In introducing the list of acceptable measures, W. Va. CSR § 38-2-3.12.d.2 additionally utilizes the phrase "include, but not be limited to." This language indicates that the examples given are demonstrative, not exclusive. *See, e.g.*, *Postlewait v. City of Wheeling*, 231 W. Va. 1, 4, 743 S.E.2d 309, 312 (2012) (observing "*Black's Law Dictionary* (9th Ed. 2009) defines the term 'include' as 'to contain as a part of something,' and says that the term 'typically indicates a partial list . . . . But some drafters use phrases such as *including without limitation* and *including but not limited to*—which mean the same thing.' Accordingly, by using the word 'includes' in Rule 6(a), this Court was setting forth only a partial list of legal holidays."); *Davis Mem'l Hosp. v. West Virginia State Tax Comm'r*, 222 W. Va. 677, 684, 671 S.E.2d 682, 689 (2008) (recognizing that "[t]he term 'includ[es]' in a statute is to be dealt with as a word of enlargement and this is especially so where . . . such word is followed by 'but not limited to' the illustrations given." (quotations and citations omitted)); *State Human Rights Comm'n v. Pauley*, 158 W. Va. 495, 501, 212 S.E.2d 77, 80 (1975) (same). Accordingly, we agree with the conclusions of both the SMB and the circuit court that W. Va. CSR § 38-2-3-12.d.2 refers to certain types of mitigation measures that *may* be undertaken, but it *does not require* any particular mitigation action.

24

With respect to the gas pipelines, Marshall Coal's permit application includes the following narrative in its subsidence control plan:

> Gas Lines
>
> Mining beneath gas pipelines will be handled per common law practices in accordance with West Virginia codes and regulations and severance deeds between the pipeline owner and [Marshall Coal].

Thus, Marshall Coal's subsidence control plan set out an action that it would take to mitigate damage to Texas Eastern's pipelines, *i.e.*, that it would handle mining under the pipelines "in accordance with West Virginia codes and regulations and severance deeds between the pipeline owner and [itself]." Insofar as Marshall Coal was not required to identify a specific type of mitigation action with respect to the gas pipelines, it was for the Secretary of the WVDEP to determine whether Marshall Coal's proposed action was sufficient.[26] By granting Marshall Coal the requested permit, the Secretary found the foregoing description to be adequate. The SMB affirmed that decision, as did the circuit court. We find no grounds to reverse.

---

[26]*See* W. Va. CSR § 38-2-3.32.a. ("The Secretary shall review an application for a permit, a permit revision, or a permit renewal, written comments and objections submitted relative to the application, records of any informal conference or hearing held relative to the application, and issue a written decision either granting, requiring modification of, or denying the application."); W. Va. CSR § 38-2-2.109 ("Secretary means the Secretary of the Department of Environmental Protection or his authorized agent.").

# IV.

## DISCUSSION - APPEAL NUMBER 16-0877

The SMB, in the Consol Appeals, found that, "[a]s to post-mining subsidence-induced damage to pipelines, the Board rules that WV CSR § 38-2-16.2.c.2 requires Consol to either repair or compensate for such damages regardless of its common law property rights." The circuit court affirmed this ruling, concluding that

> 23. WV CSR §§ 38-2-16.2.c.2 *et seq.* does not contain any provisions that absolve the permittee from liability in cases where the permittee holds common law deed waivers.

> 24. Thus, [Marshall Coal] is required to comply with the provisions set forth in WV CSR §§ 38-2-16.2.c.2 by correcting material damage resulting from subsidence as directed by the applicable code provisions, even in instances where [Marshall Coal] holds common law deed waivers.

Marshall Coal, the petitioner in Appeal Number 16-0877, argues that the circuit court erred in ruling that W. Va. CSR § 38-2-16.2.c.2 required Marshall Coal to repair or compensate for material damage to Texas Eastern's pipelines resulting from subsidence, regardless of Marshall Coal's superior, contractual common law property rights. Marshall Coal submits that it or its predecessors-in-interest bargained for and purchased the right to recover coal and the express right to subside the surface without incurring liability in the proposed permit revision area.

26

Texas Eastern responds that, under W. Va. CSR § 38-2-16.2.c.2, a mine operator must repair or pay compensation for mine subsidence damage that it causes to pipelines, regardless of common law rights. WVDEP and Highways,[27] as amicus curiae, support the circuit court's conclusion that W. Va. CSR § 38-2-16.2.c.2 abrogates the common law.

W. Va. CSR § 38-2-16.2 is within a larger rule pertaining to Subsidence Control and is titled "Surface Owner Protection." W. Va. CSR § 38-2-16.2.c.2 states:

> 16.2.c. Material Damage. Material damage in the context of this section and 3.12 of this rule [W. Va. CSR § 38-2-3.12] means: any functional impairment of surface lands, features, structures or facilities; any physical change that has a significant adverse impact on the affected land's capability to support current or reasonably foreseeable uses or causes significant loss in production or income; or any significant change in the condition, appearance or utility of any structure from its pre-subsidence condition. The operator shall:
>
> . . . .
>
> 16.2.c.2. Either correct material damage resulting from subsidence caused to any structures or facilities by repairing the damage or compensate the owner of such structures or facilities

---

[27]Amicus curiae, Highways, in arguing that W. Va. CSR § 38-2-16.2.c.2 abrogates the common law, cites cases involving private property owners' rights (as opposed to those of corporations) where a deed shielded the coal operator from liability for subsidence. The courts in those cases ruled in the property owners' favor. *See Rose v. Oneida Coal Co., Inc.*, 180 W. Va. 182, 375 S.E.2d 814 (1988); *Rose v. Oneida Coal Co., Inc.*, 195 W. Va. 726, 466 S.E.2d 794 (1995). Because the cases relied upon by Highways involve private property owners, we find them unpersuasive.

in the full amount of the diminution in value resulting from the subsidence. Repair of damage includes rehabilitation, restoration, or replacement of damaged structures or facilities. Compensation may be accomplished by the purchase prior to mining of a non-cancelable premium-prepaid insurance policy. The requirements of this paragraph only apply to subsidence related damage caused by underground mining activities conducted after October 24, 1992 . . .

Noticeably absent from the foregoing language is any indication of the impact a coal operator's superior property rights has on its obligation to repair or compensate for subsidence damage where the coal operator has bargained for and obtained an express right to subside the surface without incurring liability. Due to this absence, we must look elsewhere for guidance.

This Court has

in the past found existing waivers of the right of subjacent or lateral support to be valid, provided that the language of the deed and the circumstances surrounding the conveyance show a clear intention by the surface owner to waive such support:

Under the West Virginia common law of property, the well recognized and firmly established rule is that when a landowner has conveyed the minerals underlying the surface of his land, he retains the right to the support of the surface in its natural state, but the owner of land may release or waive his property right of subjacent support by the use of language that clearly shows that he intends to do so; however, this law has been modified to some extent by the

28

> enactment of the West Virginia Surface Coal Mining and Reclamation Act, W. Va. Code, [22-3-1], *et seq*. and the extent of such modification will be ruled upon when properly presented.
>
> Syllabus, *Rose v. Oneida Coal, Co. Inc.*, 180 W. Va. 182, 375 S.E.2d 814 (1988)[.]

*Antco, Inc. v. Dodge Fuel Corp.*, 209 W. Va. 644, 651-52, 550 S.E.2d 622, 629-30 (2001).

*See also Schultz v. Consolidation Coal Co.*, 197 W. Va. 375, 384, 475 S.E.2d 467, 476 (1996) (observing that "[i]t is undisputed that West Virginia common law permits surface owners to waive the right to subjacent support," and "[c]ourts in this jurisdiction that have examined the validity of subjacent support waivers within severance deeds have consistently upheld the validity of these waivers under this state's common law"). The parties to this appeal do not dispute that Marshall Coal possesses the right to subside the surface and that its right is superior to Texas Eastern's right-of-way.

It is well established that "[t]he common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested." *State v. Louk*, 237 W. Va. 200, 217, 786 S.E.2d 219, 236 (2016) (quotations and citations omitted). *Accord* Syl. pt. 4, *State ex rel. Van Nguyen v. Berger*, 199 W. Va. 71, 483 S.E.2d 71 (1996); Syl. pt. 4, *Seagraves v. Legg*, 147 W. Va. 331, 127 S.E.2d 605 (1962); *Shifflette v. Lilly*, 130 W. Va. 297, 43 S.E.2d 289 (1947). *See also Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 20, 217 S.E.2d 907, 911 (1975) (observing "[t]he common law is not to be

deemed altered or abrogated by statute unless the Legislature's intent to do so be plainly

manifested" (citations omitted)). Because W. Va. CSR § 38-2-16.2.c.2 is silent on this issue,

it simply cannot be interpreted to abrogate our common law as to subjacent support waivers.


We also recognize that the WVSCMRR may not be interpreted to be less

stringent that than its federal counterpart:

> In 1977, Congress enacted the Surface Mining Control and Reclamation Act to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations[.]" 30 U.S.C. § 1202(a) [1977]. The federal Act encourages "cooperative federalism" by allowing a State to adopt its own comparable program for the regulation of mining. *See* 30 U.S.C. § 1253 [1977]. *The State's* "*program need not be identical to the federal program, as long as its provisions are at least as stringent as those provided for in the federal act.*" *Canestraro v. Faerber*, 179 W. Va. 793, 794, 374 S.E.2d 319, 320 (1988). West Virginia adopted a comparable mining regulation program, the West Virginia Surface Coal Mining and Reclamation Act, which took effect in 1981. *See 1980 Acts of the Legislature*, ch. 87.

*Huffman v. Goals Coal Co.*, 223 W. Va. 724, 726, 679 S.E.2d 323, 325 (2009) (emphasis

added). Notably, however, the relevant federal regulations have deferred to state law with

regard to the protection of certain structures that are not expressly protected. *See National*

*Wildlife Fed'n v. Lujan*, 928 F.2d 453, 459 (D.C. Cir. 1991) (upholding subsidence control

regulations promulgated by Secretary of the Interior under federal Surface Mining Control

and Reclamation Act of 1977 and recognizing approvingly that "the Surface Mining Act does

not *require* operators to repair subsidence-caused material damage to structures *irrespective*

30

*of state law*" (quotations and citations omitted) (second emphasis added)). *See also* 30 C.F.R. § 817.121(e) ("*To the extent required under applicable provisions of state law*, you must correct material damage resulting from subsidence caused to any structures or facilities not protected by paragraph (d) of this section . . . ." (emphasis added)). The structures or facilities specifically protected by federal law are "non-commercial buildings, occupied residential dwellings and related structures." 30 C.F.R. § 817.121(d). Texas Eastern's pipelines do not fall within this classification of structures. Therefore, the federal Surface Mining Control and Reclamation Act ("SMCRA") is no impediment to the application of our common law on the issue of subjacent support waivers as to structures or facilities not expressly protected thereby. Indeed, the United States District Court for the Northern District of West Virginia has expressly concluded that the "SMCRA and WVSCMRA have not rendered invalid the common law of West Virginia on waivers of the right to subjacent support." *Smerdell v. Consolidation Coal Co.*, 806 F. Supp. 1278, 1284 (N.D. W. Va. 1992).[28]

---

[28]This Court previously has held that

> [a] waiver of damages provision contained in a broad form coal severance deed is not the type of explicit waiver contemplated by and required by [W. Va. Code § 22-3-22(d)(4)], before mining operations can be lawfully conducted within three hundred feet of an occupied dwelling.

Syl. pt. 4, *Cogar v. Sommerville*, 180 W. Va. 714, 379 S.E.2d 764 (1989). However, because *Cogar* pertained only to occupied dwellings, the case is not applicable to the instant matter.

31

We further acknowledge, however, that a subjacent support waiver does not mean that a coal operator has no obligation whatsoever with respect the gas pipelines crossing the surface above a mining area. For example, the Utility Protection Standard discussed *supra* in Section III of this opinion expressly requires that

> [a]ll surface mining operations shall be conducted in a manner which minimizes damage, destruction, or disruption of services provided by oil, gas, and water wells; oil, gas, and coal-slurry pipelines; railroads; electric and telephone lines; and water and sewage lines which pass over, under, or through the permit area, unless otherwise approved by the owner of those facilities and the Secretary.

W. Va. CSR § 38-2-14.17.

Accordingly, based upon the forgoing analysis, we now expressly hold that W. Va. CSR § 38-2-16.2.c.2 does not abrogate West Virginia common law with respect to subjacent support waivers contained within coal severance deeds.

Because the circuit court's ruling is contrary to this holding, we find the court erred, and we reverse that portion of the circuit court's ruling.

## V.

## CONCLUSION

Based upon the foregoing analysis, the August 5, 2016, order of the Circuit Court of Marshall County is affirmed, in part, and reversed, in part.

Affirmed, in part, and Reversed, in part.