Jenkins, Justice:
*842 This lawyer disciplinary proceeding against George N. Sidiropolis ("Mr. Sidiropolis") was brought to this Court by the Office of Disciplinary Counsel ("ODC") on behalf of the Lawyer Disciplinary Board ("LDB"). The sanctions recommended by the Hearing Panel Subcommittee ("HPS") of the LDB include, among other things: a two-year suspension; a stay of the two-year suspension after sixty days have been served for imposition of a twenty-two month period of supervised probation (with the supervised probation being subject to various conditions and requirements); automatic reinstatement at the end of the sixty-day suspension; suspension for the remainder of the original two-year suspension period, upon proper petition to this Court, if the conditions and requirements of the supervised probation are violated; reinstatement requiring a petition pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure if the conditions and requirements of the supervised probation are violated; and random drug and alcohol screening throughout the period of suspension and supervised probation along with the execution of a monitoring contract with the West Virginia Judicial and Lawyer Assistance Program. The ODC, LDB, and Mr. Sidiropolis all agree with the sanctions recommended by the HPS. Upon careful review of the record submitted, the parties' briefs and oral arguments, and the relevant law, this Court finds that the sanctions recommended by the HPS, which are supported by the ODC and the LDB, are appropriate under the circumstances of this case.
I.
FACTUAL AND PROCEDURAL HISTORY
Mr. Sidiropolis was admitted to the West Virginia State Bar on January 10, 2007. Accordingly, he is subject to the disciplinary jurisdiction of this Court and its properly constituted LDB. Below we set out the conduct underlying this disciplinary matter as well as the relevant procedural history.
A. Underlying Conduct and Factual Background
Mr. Sidiropolis practices law in Wheeling, West Virginia, and his practice is concentrated in the area of insurance law. The events that led to Mr. Sidiropolis' conduct underlying this disciplinary proceeding originated in 2008 when Mr. Sidiropolis was involved in an automobile accident. As a result of the automobile accident, Mr. Sidiropolis suffered herniated disks with nerve root impingement. To manage his resulting pain, Mr. Sidiropolis was prescribed the opioid drugs Vicodin[1] and Oxycodone.[2] While the record does not suggest that the prescriptions were provided unlawfully, Mr. Sidiropolis did testify at his hearing before the HPS that he was prescribed these drugs in large quantities. Mr. Sidiropolis received various types of treatment to relieve his pain, including physical therapy, chiropractic manipulation, epidural steroidal injections, and other less-effective *843 medications, but he found that the opioid drugs being prescribed to him provided the quickest relief from his pain and allowed him to work; therefore, he increasingly relied on the prescribed drugs to relieve his pain.
Admitting his naiveté with respect to the opioid pain medications being prescribed to him, Mr. Sidiropolis testified that he used them without concern from 2008 until sometime in 2013 or 2014, when he finally came to realize he was addicted to them. At that time, he visited a Suboxone[3] clinic in Pittsburgh, Pennsylvania, and was given a prescription for ninety doses of the drug, which he used over a period of about six months. After that, based upon the belief that he would be unable to return to the pain clinic where he had previously been given prescriptions for the opioid pain medications, Mr. Sidiropolis began to purchase the prescription medications "off the street." During this time, Mr. Sidiropolis also tried to quit using the opioid medications "cold turkey," but the withdrawal symptoms were severe and resulted in him being admitted to the hospital on multiple occasions. Thus, he continued to use the drugs, and, eventually, due to the high cost and unavailability of illegal prescription opioid medications, he transitioned to heroin, a stronger and cheaper alternative for managing his pain. According to Mr. Sidiropolis, he "didn't necessarily use drugs" for their "euphoric effect." Instead, he sought "to maintain ... a baseline" to manage his pain. Once he made the change to heroin, however, his "use just spiraled" and "was just unconscionably bad." He explained that at the height of his addiction, he was using heroin four times a day.
Mr. Sidiropolis still was practicing law while abusing heroin, but, with the intention of taking some time away from work to try to overcome his addiction, he began to wind down his practice and had obtained co-counsel for a number of his cases. Nevertheless, on March 27, 2015, Mr. Sidiropolis sought to purchase heroin. He testified during the ODC hearing that
[t]he individual who would deliver drugs to me wouldn't answer his telephone. I reached out to his supplier and he was actually in Wheeling, although he lived in the Mt. Washington area [of Pittsburgh, Pennsylvania]. ... I met him at a Rite Aid in Elm Grove, which is in Wheeling, and followed him to his home in the Mt. Washington area of Pittsburgh[,] where I purchased heroin and used a small amount at his home.
On his return to Wheeling, Mr. Sidiropolis was stopped in Washington, Pennsylvania, by Pennsylvania State Police. During the course of the stop, Mr. Sidiropolis was asked to perform various field sobriety tests, which he was not able to complete. A K9 search of the exterior of Mr. Sidiropolis' vehicle resulted in the K9 giving an alert signaling the presence of illegal drugs, so an interior search of the vehicle was conducted. Upon searching the interior of the vehicle, Pennsylvania State Police found a shopping bag with ten bricks of heroin wrapped in newspaper. Mr. Sidiropolis was taken into custody for DUI and transported to a hospital for chemical blood testing. Thereafter, he was transported to the Pennsylvania State Police Station for questioning, where Mr. Sidiropolis gave a detailed statement and agreed to cooperate with the authorities. In addition, contact was made with a special agent of the federal Drug Enforcement Administration and with the Marshall County, West Virginia, Drug Task Force. After several hours, Mr. Sidiropolis was released to his father. According to Mr. Sidiropolis, he has not used heroin since this incident.
By letter dated June 22, 2015, Mr. Sidiropolis, through counsel, self-reported the above-described incident to the ODC; he also informed the ODC that the United States Attorney's Office for the Northern District of West Virginia had charged him, by information, with one count of conspiracy to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (2012)[4] and 21 U.S.C § 846 (2012).[5] The letter *844 also advised the ODC that Mr. Sidiropolis had been cooperating with federal and state drug task forces, had begun working to combat his drug addiction, and was petitioning the United States District Court for the Northern District of West Virginia to accept him into the newly formed federal Drug Court Program.[6] Finally, according to the letter, Mr. Sidiropolis had, prior to his encounter with the Pennsylvania State Police, acquired co-counsel on the cases he was handling, and, subsequent to said encounter, he informed his co-counsel of his current situation and each counsel agreed to continue with the joint representation. Mr. Sidiropolis also contacted the West Virginia Judicial and Lawyer Assistance Program ("JLAP") to seek help to overcome his substance abuse. The record indicates that, during this time, Mr. Sidiropolis also had begun participating in a twelve-step addiction recovery program.
Mr. Sidiropolis then reached a plea agreement with the United States wherein he agreed to plead guilty to one count of conspiracy to distribute heroin.[7] The plea agreement *845 was filed by order of James E. Seibert, United States Magistrate Judge, on June 24, 2015.[8] In addition, Mr. Sidiropolis formally applied to participate in the federal Drug Court Program. He was accepted into the program on July 6, 2015.
In accordance with his participation in the Drug Court Program, Mr. Sidiropolis attended daily group therapy, cognitive behavior therapy, and individual therapy. In addition, he performed 500 hours of community service[9] and self-help, and, during the course of his Drug Court Program participation, he tested negative on more than 150 urine screens, and had no positive urine screens. Mr. Sidiropolis' compliance with the Drug Court Program was monitored through monthly status hearings before United States District Court Judge John P. Bailey. Following eighteen months of participation, Mr. Sidiropolis successfully completed the federal Drug Court Program; he also completed six months of participation in an after-care program. He then filed, in the United States District Court, a motion to dismiss seeking dismissal, with prejudice, of the federal information charging him with one count of conspiracy to distribute heroin. By order entered on May 15, 2017, the motion was granted, and the information was dismissed with prejudice.
In addition to his compliance with the federal Drug Court Program requirements, Mr. Sidiropolis continued to engage in a twelve-step addiction recovery program. Testimony by his past and present program sponsors described his passion, dedication, and time commitment to going through the steps of the program, and his faithfulness to his own recovery as well as his efforts to help others that extended "above and beyond." Mr. Sidiropolis was involved in starting a New Year's retreat for recovering addicts, so they would have someplace to go on a holiday that traditionally includes intoxicating substances. He has also helped to start new Narcotics Anonymous meetings, including meetings in a correctional facility and rehabilitation facility.[10] Finally, Mr. Sidiropolis has become a sponsor, and, at the time he testified before the HPS, he was sponsoring about a dozen young men.
B. Statement of Charges and Recommendation of the HPS
Following Mr. Sidiropolis' self-report of his misconduct, the ODC, by letter dated June 26, 2015, notified Mr. Sidiropolis that it had opened a complaint and requested a response from him.[11] Mr. Sidiropolis' response was received in July 2015. After Mr. Sidiropolis completed the federal Drug Court Program and his federal information was dismissed, the LDB filed with the Clerk of this Court, on December 29, 2017, a one-count Statement of Charges alleging that Mr. Sidiropolis violated Rule 8.4(b) of the West Virginia Rules of Professional Conduct[12] by committing *846 "criminal acts in violation of federal and state law regarding the unlawful possession of heroin, including, (1) Conspiracy to Distribute Heroin in violation of Title 21 USC § 841(a)(1) and § 846 ; and (2) possession of a controlled substance in violation of W. Va. Code § 60A-4-401."
Disciplinary Counsel then filed her mandatory discovery. Although Mr. Sidiropolis filed his answer to the statement of charges, he failed to timely provide his mandatory discovery, which prompted Disciplinary Counsel to file a "Motion to Exclude Testimony of Witnesses and/or Documentary Evidence or Testimony of Mitigating Factors." Mr. Sidiropolis filed a response in opposition to the motion, and Disciplinary Counsel withdrew the motion at a telephonic prehearing. Thereafter, this matter proceeded to a hearing before the HPS, at which testimony was heard from Mr. Sidiropolis; Kurt Platte, his current recovery sponsor; Richard Lund, a former recovery sponsor; and Jacob Robinson, his current employer. Numerous facts, and Mr. Sidiropolis' rule violation, were established by joint stipulations. Following the hearing, the HPS noted that Mr. Sidiropolis stipulated to his violation of Rule 8.4(b) as charged. The HPS recommends the following sanctions:
a. [Mr. Sidiropolis'] law license be suspended for a period of two years [sic] (2) years;
b. [Mr. Sidiropolis] will immediately serve sixty (60) days of the suspension and the remainder of the term of suspension will be stayed for a term of supervised probation[13] by a West Virginia licensed attorney in good standing who shall provide quarterly reports to the Office of Lawyer Disciplinary Counsel regarding [Mr. Sidiropolis'] compliance with the other terms and conditions of his supervised practice;
c. [Mr. Sidiropolis] shall provide a contact person (e.g., a sponsor, mentor, or other recovering person) for his supervising attorney to communicate with regarding [his] ongoing efforts at recovery;
d. That upon his suspension that [sic] [Mr. Sidiropolis] must comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure;
e. That [Mr. Sidiropolis] be subject to automatic reinstatement of his law license at the end of the sixty (60) day suspension;
f. If [Mr. Sidiropolis] breaches the terms of his probation during the period of the term of suspension, upon proper petition to the Court, [his] license will be immediately suspended for the remainder of the term of suspension;
g. That, should suspension occur, [Mr. Sidiropolis] would be subject to the requirement to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure;
h. [Mr. Sidiropolis] agrees to undergo random drug and alcohol screening throughout the period of his probation and enter into a monitoring contract with the West Virginia Judicial and Lawyer Assistance Program; and
i. [Mr. Sidiropolis] shall pay costs of this disciplinary proceeding [pursuant] to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.
(Footnote text modified).
Before this Court, the LDB, ODC, and Mr. Sidiropolis all consent to the foregoing sanctions recommended by the HPS. They all contend that these proposed sanctions are fair and reasonable, and serve the objectives of the disciplinary process to protect the public and the legal profession while also assisting the subject lawyer to successfully overcome his addiction and regain his status as a productive member of society.
II.
STANDARD OF REVIEW
When this Court considers a lawyer disciplinary matter,
*847 [a] de novo standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board ("HPS") ] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.
Syl. pt. 3, Comm. on Legal Ethics v. McCorkle , 192 W. Va. 286, 452 S.E.2d 377 (1994). Even though we give respectful consideration to the recommendations of the HPS, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law." Syl. pt. 3, Comm. on Legal Ethics v. Blair , 174 W. Va. 494, 327 S.E.2d 671 (1984).
In addition, we observe that
Rule 3.7 of the Rules of Lawyer Disciplinary Procedure, effective July 1, 1994, requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence. Prior cases which required that ethics charges be proved by full, preponderating and clear evidence are hereby clarified.
Syl. pt. 1, Lawyer Disc. Bd. v. McGraw , 194 W. Va. 788, 461 S.E.2d 850 (1995). However, Mr. Sidiropolis voluntarily stipulated to the rule violation as charged, and to his underlying criminal conduct. Thus, to the extent that the parties to this proceeding have stipulated various facts and Mr. Sidiropolis' violation of Rule 8.4(b), the burden of proof has been met. "Stipulations or agreements made in open court by the parties in the trial of a case and acted upon are binding and a judgment founded thereon will not be reversed." Syl. pt. 1, Butler v. Smith's Transfer Corp. , 147 W. Va. 402, 128 S.E.2d 32 (1962) ; accord Syl. pt. 3, In re Starcher , 202 W. Va. 55, 501 S.E.2d 772 (1998) ; See also In re Starcher , 202 W. Va. at 61, 501 S.E.2d at 778 ("The Court is of the opinion that the facts stipulated by the parties constitute proof by clear and convincing evidence."). Moreover, the parties do not dispute the basic facts upon which this disciplinary action is based.
With regard for the foregoing standards, and with the understanding that there are no disputed material facts in relation to this disciplinary matter, we proceed to review the findings and recommendations of the HPS, while bearing in mind "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys[,] and to safeguard its interest in the administration of justice[.]" Comm. on Legal Ethics v. Keenan , 192 W. Va. 90, 94, 450 S.E.2d 787, 791 (1994).
III.
DISCUSSION
Because the relevant facts underlying this disciplinary proceeding are not disputed and Mr. Sidiropolis has voluntarily stipulated to his violation of Rule 8.4(b), we focus our analysis of this matter on the proper sanctions to be imposed. Our consideration of sanctions is guided by Syllabus point 4 of Office of Lawyer Disciplinary Counsel v. Jordan , 204 W. Va. 495, 513 S.E.2d 722 (1998), which holds:
Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."
We will consider each of these Jordan factors in turn. Thereafter, we will discuss the imposition of appropriate sanctions.
*848 A. Duty Violated
The first Jordan factor asks "whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession." Syl. pt. 4, in part, Jordan , 204 W. Va. 495, 513 S.E.2d 722 ; accord W. Va. R. Disc. P. 3.16. There is no evidence that Mr. Sidiropolis violated any duty to a client. In this regard, he testified that, after he began using heroin, he associated with co-counsel on his remaining cases and thereby protected his clients' interests, at least in terms of the minimum standard required of lawyers. He did admit, however, that, because of his drug use, he was not performing at his best as an attorney.
The HPS found that Mr. Sidiropolis did, however, violate duties owed to the public, the legal system, and the legal profession by illegally purchasing, possessing, and using illegal drugs. The HPS explained that Mr. Sidiropolis
violated his duty to the public in the sense that his conduct was illegal. [Stipulated] ODC further submits that lawyers also owe duties to the legal system. Lawyers are officers of the court, and must abide by the rules of substance and procedure which shape the administration of justice. Lawyers must always operate within the bounds of the law, and not engage in any other illegal or improper conduct. Finally, lawyers owe duties to the legal profession. Unlike the obligations mentioned above, these duties are not inherent in the relationship between the lawyer and the community. Attorneys are representatives of the legal system, and by engaging in illegal conduct [Mr. Sidiropolis] failed in [his] duties as an attorney.
We agree that Mr. Sidiropolis' illegal conduct violated duties he owed to the public, the legal system, and the legal profession.
B. Intentional, Knowing, or Negligent Actions
The second Jordan factor asks "whether the lawyer acted intentionally, knowingly, or negligently." Syl. pt. 4, in part, Jordan , 204 W. Va. 495, 513 S.E.2d 722 ; accord W. Va. R. Disc. P. 3.16. Before the HPS, it was stipulated by the parties to the proceeding that Mr. Sidiropolis, although suffering from a substance abuse problem, acted intentionally and knowingly when he violated the law. In his brief to this Court, Mr. Sidiropolis admits that he was aware that he was addicted to prescription medicine, he failed to seek appropriate effective treatment, and he made a conscious and deliberate decision to use illegal drugs. Accordingly, the fact that Mr. Sidiropolis acted intentionally and knowingly is established.
C. Actual or Potential Injury
The third factor under Jordan addresses "the amount of the actual or potential injury caused by the lawyer's misconduct." Syl. pt. 4, in part, Jordan , 204 W. Va. 495, 513 S.E.2d 722 ; accord W. Va. R. Disc. P. 3.16. By stipulation, the parties agreed that "[w]hile the potential for harm to his clients, the public[,] and the legal system was great, the only actual injury caused by [Mr. Sidiropolis'] conduct was to himself, his family[,] and the public's perception of lawyers." The LDB opined that Mr. Sidiropolis' "greatest harm was to himself." While this factor was addressed by stipulation, we find that it fairly reflects the evidence presented in this matter. When Mr. Sidiropolis finally became aware of his addiction, he took steps to associate with various co-counsel and, based upon the lack of evidence to the contrary, successfully protected his clients' interests. However, a lawyer is a key player in our legal system, and a lawyer committing a serious criminal act is not to be taken lightly. Such an action certainly damages the public's perception of lawyers and, by extension, our legal system.
D. Aggravating and Mitigating Factors
The final factor under Jordan requires consideration of "the existence of any aggravating or mitigating factors"; thus, we will examine both. Syl. pt. 4, in part, Jordan , 204 W. Va. 495, 513 S.E.2d 722 ; accord W. Va. R. Disc. P. 3.16.
1. Aggravating Factors. This Court has established that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *849 Lawyer Disc. Bd. v. Scott , 213 W. Va. 209, 579 S.E.2d 550 (2003). The HPS identified two aggravating factors: (1) Mr. Sidiropolis' status as an experienced member of the Bar; and (2) the misconduct, which involved the purchase, use, and transport of heroin, was illegal. In addition, we find the amount of heroin in Mr. Sidiropolis' possession, i.e., ten bricks, is an aggravating factor, as well as the fact that he has suffered no criminal penalty for his illegal conduct.
2. Mitigating Factors. This Court has held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, Scott , 213 W. Va. 209, 579 S.E.2d 550. We have elaborated by explaining that
[m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment ; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.
Syl. pt. 3, Id. Use of the word "include" to introduce the list of mitigating factors signals that this list is demonstrative and not exclusive. See, e.g. , Texas E. Transmission, LP v. W. Va. Dep't of Envtl. Prot. , 240 W. Va. 131, 143, 807 S.E.2d 802, 814 (2017) (observing that "the phrase 'include, but not be limited to[,]' ... indicates that the examples given are demonstrative, not exclusive"); Postlewait v. City of Wheeling , 231 W. Va. 1, 4, 743 S.E.2d 309, 312 (2012) (interpreting Rule 6(a) of the Rules of Civil Procedure and concluding that "by using the word 'includes' in Rule 6(a), this Court was setting forth only a partial list of legal holidays"); Davis Mem'l Hosp. v. W. Va. State Tax Comm'r , 222 W. Va. 677, 684, 671 S.E.2d 682, 689 (2008) (recognizing that "[t]he term 'includ[es]' in a statute is to be dealt with as a word of enlargement" (quotations and citations omitted)). Thus, mitigating factors are not limited to those expressly identified by the Scott Court.
The HPS found multiple mitigating factors to be present in this case: (1) absence of a prior disciplinary record; (2) cooperation with the disciplinary authorities; (3) sustainment of a meaningful period of recovery of more than three years from an addiction to heroin ; and (4) participation in and successful completion of the federal Drug Court Program. Expanding on some of these findings, we observe that, Mr. Sidiropolis' cooperation with the disciplinary authorities included his self-reporting, his admission that he engaged in illegal conduct, and his agreement to a variety of stipulations that relieved ODC of its burden of establishing clear and convincing proof of the same and shortened the ultimate duration of these disciplinary proceedings. Furthermore, while we agree that Mr. Sidiropolis has sustained a meaningful period of recovery as identified by the HPS, we find it worthy of acknowledgement that the record evidence pertaining to Mr. Sidiropolis reflects an individual who is not only passionate and committed to maintaining his own sobriety, but someone who has gone to great lengths to help others overcome their addictions by initiating and supporting positive events (such as a sober New Year's event, and recovery meetings in jail and rehabilitation facilities), and by becoming a sponsor to other recovering addicts. Finally, we note that, in successfully completing the federal Drug Court Program, Mr. Sidiropolis performed 500 hours of community service and submitted to more than 150 urine screens, with all of these tests being negative. We find additional mitigating factors to be Mr. Sidiropolis' agreement to cooperate with law enforcement, his participation in the JLAP program, and his expressed remorse for his conduct. With regard to his remorse, Mr. Sidiropolis has stated that he "didn't deserve ... to be one of the people who like made it to the other side [of addiction], but, you know, I have like -- feel a real duty to *850 share that with other people and I can't do that and return to drug use."
Having considered all the factors set out in Jordan , our final step is to decide the appropriate sanction in light of those factors.
E. Sanctions
This Court has recognized that "[t]he principle purpose of attorney disciplinary proceedings is to safeguard the public's interest in the administration of justice." Syl. pt. 3, Daily Gazette Co. v. Comm. on Legal Ethics , 174 W. Va. 359, 326 S.E.2d 705 (1984). Regarding our consideration of the appropriate sanctions to be imposed, this Court has explained that,
" ' "[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, Committee on Legal Ethics v. Walker , 178 W. Va. 150, 358 S.E.2d 234 (1987).' Syllabus Point 5, Committee on Legal Ethics v. Roark , 181 W. Va. 260, 382 S.E.2d 313 (1989)." Syllabus Point 2, Committee on Legal Ethics v. White , 189 W. Va. 135, 428 S.E.2d 556 (1993).
Syl. pt. 4, McCorkle , 192 W. Va. 286, 452 S.E.2d 377. Moreover, the types of sanctions that may be imposed are set out in Rule 3.15 of the Rules of Lawyer Disciplinary Procedure, which provides that
[a] Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct or pursuant to Rule 3.14: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed, the Hearing Panel Subcommittee or the Court shall order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the disciplinary proceeding unless the panel or the Court finds the reimbursement will pose an undue hardship on the lawyer. Willful failure to reimburse the Board may be punished as contempt of the Court.
The conduct underlying these disciplinary proceedings is quite serious and reflects how addiction issues, particularly involving heroin, are becoming all too common in our State and our Nation. However, this proceeding offers encouragement that recovery is possible with the proper assistance. Thus, while Mr. Sidiropolis' criminal conduct cannot be ignored, we find it appropriate in this instance to, in determining the proper sanction, recognize his hard-earned recovery and his dedication to his own sobriety and to that of others around him. As Justice Workman has aptly observed, "there is hope in the battle against the disease of addiction that so many families are facing; and ... West Virginia's legal profession, including our disciplinary system, supports the recovery and rehabilitation of impaired lawyers." In re Reinstatement of diTrapano , 240 W. Va. 612, 620, 814 S.E.2d 275, 283 (2018) (Workman, J., concurring).
Thus, upon careful consideration of this matter, we have come to the conclusion that the sanctions recommended by the HPS, which are endorsed by the ODC and the LDB, appropriately punish Mr. Sidiropolis for his misconduct, while they also acknowledge the great strides he has achieved to make amends for his prior conduct, to restore his competence as a practicing attorney, and to help others overcome addictions.
The HPS recommended, among other sanctions, a two-year suspension, with Mr. Sidiropolis immediately serving sixty days of the suspension and the remainder of the term of suspension being stayed for a term of supervised probation.[14] This Court previously has upheld multi-year suspensions in cases involving the use of illegal drugs. See, e.g. , McCorkle , 192 W. Va. 286, 452 S.E.2d 377 (imposing two-year suspension where lawyer used cocaine and crack cocaine, engaged in improper solicitation of clients, and testified *851 falsely before the HPS); Comm. on Legal Ethics v. White , 189 W. Va. 135, 428 S.E.2d 556 (1993) (suspending lawyer for two years after he pleaded guilty to possession of cocaine, marijuana, and Percocet ). Thus we find the two-year suspension to be appropriate and "adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. pt. 4, in part, McCorkle , 192 W. Va. 286, 452 S.E.2d 377.
We likewise find the proposed stay and associated supervised probationary period warranted in light of the mitigating factors discussed above, and, in particular, Mr. Sidiropolis' efforts toward his own recovery and that of others. Indeed, in this regard the HPS specifically expressed that
it was very much impressed by [Mr. Sidiropolis'] recovery. Unfortunately, Panel members are involved in increasing numbers of these matters. [Mr. Sidiropolis'] recovery efforts [are] especially commendable. His work with others suffering from addiction went above and beyond what could be expected or required of anyone navigating this process. This Panel wishes Mr. Sidiropolis continuing success and thanks him for his time helping others.
Moreover, should Mr. Sidiropolis violate any conditions of the supervised probationary period, his law license will be suspended for the remainder of the term of his suspension.
Accordingly, based upon the foregoing discussion, we find that Mr. Sidiropolis' violation of Rule 8.4(b) of the West Virginia Rules of Professional Conduct warrants the sanctions recommended to this Court by the HPS and endorsed by the ODC and the LDB.
IV.
CONCLUSION
Based upon the factors and reasoning set out in this opinion, we impose the following sanctions:
a. Mr. Sidiropolis' law license shall be suspended for a period of two years;
b. Mr. Sidiropolis will immediately serve sixty days of the suspension and the remainder of the term of suspension shall be stayed for a twenty-two month term of supervised probation by a West Virginia licensed attorney in good standing who shall provide quarterly reports to the Office of Lawyer Disciplinary Counsel regarding Mr. Sidiropolis' compliance with the other terms and conditions of his supervised practice;
c. The supervised probation shall be subject to the conditions and requirements set out in Appendix A to this opinion;
d. Mr. Sidiropolis shall provide a contact person (e.g., a sponsor, mentor, or other recovering person) for his supervising attorney to communicate with regarding his ongoing efforts at recovery;
e. Upon his suspension, Mr. Sidiropolis must comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure;
f. Mr. Sidiropolis will be subject to automatic reinstatement of his law license at the successful end of the sixty-day suspension;
g. If Mr. Sidiropolis breaches the conditions and requirements imposed on his probation during the period of the two-year term of suspension, upon proper petition to the Court, his law license will be immediately suspended for the remainder of the two-year term of suspension;
h. Should suspension occur under paragraph g, Mr. Sidiropolis will be required to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure;
i. Mr. Sidiropolis shall undergo random drug and alcohol screening throughout the period of his probation and enter into a monitoring contract with the West Virginia Judicial and Lawyer Assistance Program; and
j. Mr. Sidiropolis shall pay all costs of this disciplinary proceeding pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.
Law license suspended and other sanctions imposed.
*852 APPENDIX A
PROBATION CONDITIONS AND OTHER REQUIREMENTS
1.0 Review Rules of Professional Conduct
Within thirty days after the effective date of the Supreme Court ordering discipline, Mr. Sidiropolis must (1) read the West Virginia Rules of Professional Conduct and the relevant rules and by-laws of the West Virginia State Bar, and (2) provide a declaration, under penalty of perjury, attesting to his compliance with this requirement, to ODC with his first quarterly report. Failure to do so constitutes a violation of this condition.
2.0 Comply with all state and federal laws, Rules of Professional Conduct, and the Conditions and Provisions of the Monitoring Agreement with the West Virginia Judicial and Lawyer Assistance Program
Mr. Sidiropolis must comply with the provisions of state and federal law, the Rules of Professional Conduct, and all conditions of his monitoring agreement with the West Virginia Judicial and Lawyer Assistance Program ("WVJLAP"). Failure to do so constitutes a violation of this condition.
3.0 Maintain Valid Official Membership Address and Other Required Contact Information
Within thirty days after the effective date of the Supreme Court ordering discipline, Mr. Sidiropolis must make certain that the State Bar has his current office address, email address, and telephone number. If Mr. Sidiropolis does not maintain an office, he must provide the mailing address, email address, and telephone number to be used for State Bar purposes. Mr. Sidiropolis must report, in writing, any change in the above information to the State Bar, within ten days after such change, in the manner required by that office.
4.0 Meet and Cooperate with ODC
Within fifteen days after the effective date of the Supreme Court ordering discipline, Mr. Sidiropolis must schedule a meeting with his Supervising Attorney and ODC to discuss the terms and conditions of his reinstatement and, within thirty days after the effective date of the court's order, must participate in such meeting. During the probation period, Mr. Sidiropolis must promptly meet with representatives of ODC as requested by it and, subject to the assertion of applicable privileges, must fully, promptly, and truthfully answer any inquiries by it and provide to it any other information requested.
5.0 Supervising Attorney
Within fifteen days of the effective date of the Supreme Court ordering discipline, Mr. Sidiropolis shall nominate and confirm a Supervising Attorney. It is recognized that information exchanged pursuant to this Agreement between Mr. Sidiropolis, the Supervising Attorney, and ODC is confidential as provided by the Rules of Professional Conduct. Within three weeks, a written plan of improvement and an agreement regarding supervision must be executed by the parties. THE SUPERVISION PERIOD WILL NOT BEGIN UNTIL THE INITIAL MEETING REPORT HAS BEEN RECEIVED AND REVIEWED BY ODC.
The Supervising Attorney agrees to set aside time to counsel, monitor, and meet with Mr. Sidiropolis and to fully and timely submit reports and documents as provided herein and upon request by ODC. The Supervising Attorney agrees to counsel Mr. Sidiropolis at times when the Supervising Attorney sees a need arise or when Mr. Sidiropolis contacts the Supervising Attorney.
Mr. Sidiropolis agrees to openly, honestly, and fully provide information and/or documents as requested by the Supervising Attorney and/or ODC. Failure to do so constitutes a violation of this condition. Should Mr. Sidiropolis not fully and timely respond to requests for information by ODC, ODC may seek sanctions pursuant to Rule 8.1(b) of the Rules of Professional Conduct.
6.0 Quarterly and Final Reports
a. Deadlines for Reports. Mr. Sidiropolis must submit written quarterly reports to ODC, no later than each January 10 (covering October 1 through December 31 of the prior year), April 10 (covering January 1 through March 31), July 10 (covering April 1 through June 30), and October 10 (covering July 1 through September 30), within the *853 period of probation. If the first report would cover less than thirty days, that report must be submitted on the next quarterly date and cover the extended deadline. In addition to all quarterly reports, Mr. Sidiropolis must submit a final report no earlier than ten days before the last day of the probation period and no later than the last day of the probation period.
b. Contents of Reports. Mr. Sidiropolis must answer, under penalty of perjury, all inquiries contained in the quarterly report form provided by the ODC. All reports must be: (1) signed and dated after the completion of the period for which the report is being submitted (except for the final report); (2) signed under penalty of perjury; and (3) submitted to ODC on or before each report's due date.
c. Submission of Reports. All reports must be submitted to ODC by: (1) fax or email; (2) personal delivery; (3) certified mail, return receipt requested (postmarked on or before the due date); or (4) other tracked-service provider, such as Federal Express or United Parcel Service, etc. (physically delivered to such provider on or before the due date).
d. Proof of Compliance. Mr. Sidiropolis is directed to maintain proof of his compliance with the above requirements for each such report for a minimum of one year after either the period of probation or the period of his actual suspension has ended, whichever is longer. Mr. Sidiropolis is required to present such proof upon request by ODC.
With each quarterly and final report, Mr. Sidiropolis must provide satisfactory proof of any installment payments to ODC.
Failure to do so constitutes a violation of this condition.
7.0 Client funds, property, and securities
If Mr. Sidiropolis possessed any client funds, property, or securities during the quarterly reporting period, the Supervising Attorney must ensure compliance with Rule 1.15 of the Rules of Professional Conduct and any relevant State Bar Rules.
If Mr. Sidiropolis did not possess any client funds, property, or securities during the entire period covered by a quarterly or final report, he must so state under penalty of perjury in the report filed with ODC for that reporting period.
Failure to do so constitutes a violation of this condition.
8.0 Maintain good standing with the West Virginia State Bar-Mandatory Continuing Legal Education (MCLE), Payment of Bar Dues, and Financial Responsibility Disclosure
Mr. Sidiropolis must complete the required number of MCLE hours as required by the State Bar for a lawyer in good standing. He must timely pay his State Bar dues. Mr. Sidiropolis also must complete the required disclosures, including but not limited to the Financial Responsibility Disclosure Requirement.
Failure to do so constitutes a violation of this condition.
9.0. Abstinence
Mr. Sidiropolis must abstain from using alcoholic beverages and must not use or possess any illegal drugs or illegal drug paraphernalia. In each quarterly and the final report, Mr. Sidiropolis must report compliance with this condition and compliance with all requirements as set forth in his agreement with WVJLAP. Failure to do so constitutes a violation of this condition
10.0 Abstinence Program Meetings
Mr. Sidiropolis must attend a minimum of two meetings per week, [OR OTHER SPECIFIED FREQUENCY] of an abstinence-based self-help group. Mr. Sidiropolis must provide to ODC satisfactory proof of attendance at such group meetings with each quarterly and final report.
Failure to do so constitutes a violation of this condition.
11.0 Sponsor and Relapse Reporting
Mr. Sidiropolis shall maintain a sponsor in a 12-step program and shall provide the name, address, telephone number and email address of the sponsor to ODC and his Supervising Attorney within fourteen days of being placed on probation. Mr. Sidiropolis shall request that the sponsor communicate with the Supervising Attorney in writing on a *854 quarterly basis regarding Mr. Sidiropolis' participation and progress in the 12-step program and report any lapses in sobriety or usage of unprescribed controlled substances to the Supervising Attorney within seventy-two hours of his/her knowledge of that usage.
12.0 Medical Waivers
Within forty-five days after the effective date of the Supreme Court ordering discipline, Mr. Sidiropolis must provide ODC with an authorization to disclose and obtain medical information (medical waiver) and access to all of Mr. Sidiropolis' relevant medical records related to his addiction treatment during the period of probation. Revocation of any medical waiver is a violation of this condition. Any medical records obtained by ODC are confidential, and no information concerning them or their contents will be given to anyone except members of ODC who are directly involved with maintaining, enforcing, or adjudicating this probation condition.
13.0 Compliance with WVJLAP
Mr. Sidiropolis must fully comply with his WVJLAP Plan. He must provide WVJLAP with a satisfactory written waiver authorizing WVJLAP to provide the ODC with information regarding the terms and conditions of his participation in WVJLAP and his compliance or noncompliance with WVJLAP requirements. Revocation of such waiver is a violation of this condition. Mr. Sidiropolis will be relieved of this condition upon providing satisfactory certification of successful completion of WVJLAP to ODC. Voluntary or involuntary termination from WVJLAP prior to successful completion of the program constitutes a violation of this condition.
14.0 Commencement of Probation/Compliance with Probation Conditions
The period of probation will commence on the effective date of the Supreme Court ordering reinstatement and the completion of any conditions precedent. At the expiration of the probation period, if Mr. Sidiropolis has complied with all conditions of probation, the period of stayed suspension will be satisfied.
15.0 Costs
If Mr. Sidiropolis fails to pay any installment of the costs associated with the disciplinary and/or reinstatement proceedings as set forth by separate agreement, or as may be modified in writing by the parties, the remaining balance will be due and payable immediately.
Willful failure to honor the agreement regarding costs constitutes a violation of this condition.
JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.
JUSTICE ARMSTEAD dissents and reserves the right to file a dissenting opinion.

Vicodin contains acetaminophen and hydrocodone bitartrate; it is classified pharmacologically as an opioid analgesic. See Physicians' Desk Reference S-953 (71st ed. 2017). Pursuant to West Virginia law, the hydrocodone component of Vicodin is a Schedule II controlled substance. See W. Va. Code § 60A-2-206(b) (LexisNexis 2014 & Supp. 2018) (identifying hydrocodone as a Schedule II controlled substance).

Oxycodone is pharmacologically classified as an opioid analgesic. See Physicians' Desk Reference S-666. It is a Schedule II controlled substance according to the West Virginia Code. See W. Va. Code § 60A-2-206(b) (listing Oxycodone as a Schedule II controlled substance).

Suboxone is pharmacologically classified as a partial opioid agonist/opioid antagonist; it is used to treat opioid dependence. See Physicians' Desk Reference S-837. In West Virginia, Suboxone is a Schedule III controlled substance. See W. Va. Code § 60A-2-208(e)(2) (LexisNexis 2014 & Supp. 2018) (naming Suboxone as a Schedule III controlled substance).

Pursuant to this portion of 21 U.S.C. § 841(a) (2012): "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally- (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance ...."

Under 21 U.S.C. § 846 (2012), "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

According to the brief of the LDB, this federal Drug Court Program "is a post-plea, pre-adjudication program, whereby a defendant pleads guilty, and acceptance of the plea is delayed until final disposition. Final disposition takes place after a defendant has completed or been terminated from the program." The mission statement for the federal Drug Court Program similarly states that "[t]he Drug Court Program is the Northern District of West Virginia's federal drug court. It is a voluntary post-plea, pre-adjudication program, of at least one year, designed for individuals who suffer from substance abuse or addiction." NDWV Drug Court Program, Mission Statement , https://www.wvnd.uscourts.gov/sites/wvnd/files/Mission%20Statement%20Revision%20December%202018.pdf (last visited on June 3, 2019). The Mission Statement further explains that,
[a ]lthough no outcome is guaranteed, upon successful completion of the program , a preadjudication participant may receive a motion for downward departure, reduction of the charges to a lesser offense, recommendation for a non-guideline sentence, referral to pre-trial diversion, or the entry of an Order setting aside the previously tendered plea of guilty, dismissing the charges and directing that the Indictment and arrest records be sealed or expunged.
Id .

Mr. Sidiropolis, in his brief, asserts that "[t]he charge of conspiracy was the natural result of [Mr. Sidiropolis] purchasing large amounts of heroin for personal use." In support of this assertion, Mr. Sidiropolis cites United States v. Ray , 61 F. App'x 37, 50 (4th Cir. 2003) ("There may well be cases in which ... knowledge of an ongoing conspiracy and actions which further that conspiracy - are sufficient standing alone to support a reasonable inference that the defendant sought to further the conspiracy."); United States v. Burgos , 94 F.3d 849, 862 (4th Cir. 1996) (en banc) ("[T]he Government must prove the existence of a conspiracy beyond a reasonable doubt, but upon establishing the conspiracy, only a slight connection need be made linking a defendant to the conspiracy to support a conspiracy conviction , although this connection also must be proved beyond a reasonable doubt." (emphasis added)). Although there is evidence in the record indicating that some portion of the ten bricks of heroin in Mr. Sidiropolis' possession was to be delivered by him to an individual in Wheeling from whom Mr. Sidiropolis typically obtained heroin, in this regard Mr. Sidiropolis' testimony on cross examination during the ODC hearing was as follows:
MS. DIEHL: Mr. Sidiropolis, ... it's your testimony that you were not involved in distribution of heroin, correct?
THE WITNESS: No. I mean I didn't sell drugs to anyone. What I did do that's codified in those records is drive with a large amount of heroin that was supposed to be delivered to the person that, generally, delivered heroin to me.
You know, whether or not I would've done that or not, I don't know. I'd like to believe that I would've tried top [sic] pay for the heroin myself, but -- but, yeah, I pled guilty to that.
Later in his testimony, Mr. Sidiropolis clarified that some of the heroin was for his personal use and some was to be delivered to someone else, but he could not recall at the time of the hearing what the proportions were. He also stated that this was the one and only occasion when he transported heroin for another:
MR. AKERS: Had you engaged in that conduct before of transporting heroin back and forth between a dealer and other users as part of their -- that distribution?
THE WITNESS: No.
....
MR. AKERS: This was the first and only time?
THE WITNESS: Right. Yeah. And I -- you know, I'm not sure if that was just like miraculous that that's when I get stopped or if this was kind of like, you know, the DEA had this set up or -- I don't know about that.

The order explained that "because the plea agreement contains certain nonbinding recommendations pursuant to Fed. R. Crim. P. 11(c)(3)(A), the Court cannot accept or reject the plea agreement and recommendations contained therein until the Court has had an opportunity to receive and review a presentence report."

According to his brief, Mr. Sidiropolis' 500 hours of community service were performed for Ohio Valley Recovery, Inc., a non-profit organization that is the home for various twelve-step groups such as Alcoholics Anonymous, Al-Anon, Narcotics Anonymous, and NAR-ANON.

According to his brief, Mr. Sidiropolis started a twelve-step meeting in Marshall County; brought meetings inside the Belmont County, Ohio, Correctional Facility; and brought meetings to the Miracles Happen drug rehabilitation facility in Wheeling, West Virginia.

The HPS explained in its report that,
[b]ecause [Mr. Sidiropolis], by and through counsel, represented that [his] clients had been and would continue to be protected by the use of co-counsel and supervision, ODC did not proceed against [Mr. Sidiropolis] until the conclusion of his criminal proceedings. Disciplinary cases are typically deferred until a termination of pending criminal litigation involving substantially similar factual allegations, provided that the attorney proceeds to act with reasonable diligence to insure prompt prosecution. Committee on Legal Ethics v. Pence , 161 W. Va. 240, 240 S.E.2d 668 (1977).

Rule 8.4(b) of the Amended West Virginia Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to: ... (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

The supervised probation is subject to conditions and requirements that are attached as Appendix A to this opinion.

See supra note 13.